UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT WILL BREATHE, et al.,

    Plaintiffs,

v.

CITY OF DETROIT, et al.,

    Defendants.

Case No. 20-12363
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER [4]**

Plaintiffs Detroit Will Breathe and 14 individuals have been involved in protest activity in the City of Detroit in response to the death of George Floyd, in a continuation of the "Black Lives Matter" movement. They allege that Detroit police have responded to their demonstrations with excessive force and have violated their First and Fourth Amendment rights. (ECF No. 1, 4.) Plaintiffs seek a temporary restraining order enjoining the City of Detroit, and more specifically, the Detroit Police Department (DPD) and its officers, from using certain tactics, including the use of striking weapons, chemical agents, and rubber bullets against demonstrators, medical support personnel, and legal observers. (ECF No. 4, PageID.146–149.) For the reasons stated below, the motion is granted in part.

**I.**

Protests began in Detroit on May 29, 2020, in response to the death of George Floyd during his arrest by Minneapolis police officers. Daily demonstrations have continued throughout the summer.

Plaintiffs allege that from the start, police have responded to peaceful demonstrations with beatings, tear gas, pepper spray, rubber bullets, sound cannons, flash grenades, chokeholds, and mass arrests without probable cause. (ECF No. 1, PageID.3.) Although Plaintiffs allege there have been a number of such incidents, their motion for a temporary restraining order focuses principally on clashes that occurred between May 29 and June 2, on July 10, and on August 22, 2020. (ECF No. 4, PageID.166.) Plaintiffs argue that these tactics violate their constitutional rights, including the right to free speech and assembly under the First Amendment and the right to be free from excessive force and arrest without probable cause under the Fourth Amendment. (ECF No. 1.) Plaintiffs now ask this Court to stop the City of Detroit and its agents and employees from using certain tactics against demonstrators and bystanders for fourteen days until the Court is able to decide whether a longer injunction is required. Plaintiffs have served the City of Detroit, Mayor Duggan, and Police Chief James Craig, but the remaining individual Defendant police officers have not been served.

The Court conducted two telephonic status conferences with counsel for the served parties, who worked diligently, but were unable to reach a mutually agreeable resolution to the motion.

**II.**

A temporary restraining order (TRO), like a preliminary injunction, "is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020) (internal citation omitted); *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974) (The purpose of an ex parte TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."). The Court may issue a TRO without notice to the adverse parties only if (1) "specific facts in an affidavit or a verified complaint clearly show that

immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) Plaintiffs' "attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).[1]

In granting preliminary injunctive relief, the Court must consider and balance four factors: (1) Plaintiffs' likelihood of success on the merits, (2) whether Plaintiffs will suffer irreparable injury without an injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the public interest would be served by the injunction. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

### III.

The Court takes a short detour before analyzing these factors to stand with many of its sister courts in recognizing the following underlying principles: demonstrators have a right to protest the actions of the police and other members of the government without fear of government retaliation; police officers, especially in their duty to protect person and property, have difficult and often dangerous jobs that require them to make split-second decisions; and just as not all protestors seek destruction, not all officers seek violence. The Court must thus balance the need to protect the sacred rights of speech and assembly from interference and retaliation with that of police to respond appropriately when the safety of the officers and the City's citizens are threatened. "This Court recognizes the difficulty in drawing an enforceable line that permits police officers to use appropriate means in response to violence and destruction of property but that also does not chill free speech or abuse those who wish to exercise it." *Black Lives Matter Seattle-King Cty. v. City of Seattle, Seattle Police Dep't*, No. 2:20-CV-00887-RAJ, 2020 WL 3128299, at *2

---

[1] The individual police officer defendants have not yet been served. It is unclear whether they have notice of the lawsuit. But because the Plaintiffs did not provide the required written certification, the Court has focused on the served Defendants.

(W.D. Wash. June 12, 2020); *see also Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1291 (D. Colo. 2020).

Now to the factors for a temporary restraining order.

### A.

The first factor, likelihood of success on the merits, is the most important factor in the case of an alleged constitutional violation and is typically determinative. *See Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

### 1.

The Court begins with Plaintiffs' claims under the Fourth Amendment. Plaintiffs bring claims of excessive force, unreasonable detention conditions, and false arrest under the Fourth Amendment. As presently alleged, the claims are asserted against all Defendants.[2]

Excessive force claims are analyzed under the objective reasonableness standard articulated in *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness of any individual instance of use of force "must be judged from the perspective of a reasonable officer on the scene," *id.* at 396, allowing for the fact that police officers often make split-second decisions in "tense, uncertain, and rapidly evolving" circumstances, *id.* at 397. The Court must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" by considering factors such as the severity of the crime at issue (if any), the potential threat posed by the individual, and whether the individual is attempting to resist or evade arrest. *Id.* at 396 (internal quotations omitted).

In this case, Plaintiffs have provided a verified complaint and a number of affidavits from demonstrators who aver that in response to their peaceful protest activity during the evening of

---

[2] Going forward Plaintiffs will need to be more clear which Defendants are implicated.

August 22, 2020, Detroit police officers beat them with batons, sprayed them with pepper spray, fired tear gas and rubber bullets at them, rammed them with a police car, and more. (*See* ECF No. 1; ECF No. 4-3; ECF No. 4-4; ECF No. 4-5; ECF No. 4-6; ECF No. 4-8; ECF No. 4-9; ECF No. 4-10; ECF No. 4-11.) All of the demonstrators aver that they were protesting peacefully, chanting and singing in the street without threatening or resisting the police, when the police began using violence against them without provocation. (*Id.*)

One of the affidavits contains Instagram links to video footage of an encounter between police and protestors on August 22, 2020. (ECF No. 4-8, PageID.205.) This video footage appears to show a line of Detroit police officers, dressed in riot gear and armed with batons, standing several feet away from protestors who can be heard chanting, "we don't see no riots here, so why are you in riot gear?" This continues for several minutes. Then, suddenly, the officers appear to throw tear gas canisters into the crowd of protestors. (*Id.*) The police officers then advance on the crowd and grab, shove, and use batons to beat people standing at the front of the group. (*Id.*) There is also footage of officers pursuing individuals who are running or walking away from the chaos, apparently not posing any threat, and violently shoving them into the ground or a building. (*Id.*)

These videos, buttressed by the testimonial evidence, establishes that at least some Plaintiffs have a likelihood of success on their claims that the DPD used excessive force against them. True, Plaintiffs' chances of prevailing could be lessened by a defense of qualified immunity, but that issue has not been briefed and it is premature to address it now.

The Fourth Amendment reasonableness standard also applies when an individual is in the custody of the police. *See Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). A number of the Plaintiffs and affiants allege that after they were detained by police, the officers handcuffed them with zip ties that were fastened so tightly that they were in serious pain, their hands turned blue,

5

and they suffered physical injuries. (ECF No. 1, PageID.49–52; ECF No. 4-2, PageID.194; ECF No. 4-4, PageID.197; ECF No. 4-7, PageID.202.) The Sixth Circuit has noted that "applying handcuffs so tightly that the detainee's hands become numb and turn blue certainly raises concerns of excessive force." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). At this stage, Plaintiffs have demonstrated a likelihood of success on the merits with respect to their excessive force claim under the Fourth Amendment.[3]

## 2.

Plaintiffs also allege that Defendants violated their First Amendment rights to speech and assembly by retaliating against them for protesting.

"[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). "Organized political protest is a form of 'classically political speech.'" *Don't Shoot Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2020 WL 3078329, at *3 (D. Or. June 9, 2020) (quoting *Boos v. Barry*, 485 U.S. 312, 318 (1988)). And this protection includes criticism of public officials even when it is "vehement, caustic, and sometimes unpleasantly sharp." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (internal citations omitted).

In order to prove retaliation under the First Amendment, Plaintiffs must demonstrate that Defendants took adverse action against them which would deter a person of ordinary firmness from continuing to engage in the protected speech and that Defendants' actions were motivated at least in part by Plaintiffs' protected speech. *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

---

[3] Plaintiffs bring additional claims under the Fourth Amendment related to the treatment of protestors after they have been arrested. The strength of these claims are less clear and will, if necessary, be addressed when the record is better developed.

The present record suggests Plaintiffs have a likelihood of success in showing that an ordinary person would be deterred from participating in the protests by the actions of Detroit police officers. As discussed above, Plaintiffs may well be able to show that police officers used things like tear gas, pepper spray, and batons against peaceful protestors. At least one Plaintiff stated that they have been deterred from attending further demonstrations and exercising their First Amendment rights after being beaten and detained while acting as a medic at a protest. (ECF No. 1, PageID.16–18.)

In order to succeed on their First Amendment retaliation claim, Plaintiffs will also need to demonstrate Defendants' conduct was motivated by Plaintiffs' protected activity. Plaintiffs have provided enough evidence to establish a likelihood of success on this element too. First, the indiscriminate use of tear gas and physical violence against peaceful protestors on August 22, 2020 may alone be enough to support the inference that the police officers were at least partially motivated by Plaintiffs' protected activity. But Plaintiffs also offer affidavits stating that individual officers made statements to protesters such as "stop protesting or we will f**k you up." (ECF No. 4-10, PageID.210.) This evidence supports a finding that Plaintiffs have made a showing of a likelihood of success on the merits on their First Amendment claim. Again, Defendants may later assert qualified immunity as a defense to this claim, but at this stage, that issue is not ripe.

**3.**

Plaintiffs also allege that the City of Detroit is liable for violations of Plaintiffs' constitutional rights under a theory of municipal liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Municipal liability can be demonstrated in a number of ways, including showing that the City has a custom or practice of tolerating or permitting constitutional violations, that it failed to

properly train and supervise employees, or that a high-ranking policymaker ratified a subordinate's unconstitutional action. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiffs have the burden of showing a likelihood of success on their claim that Detroit police officers were acting pursuant to a municipal policy or custom. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).

In a similar case brought against the city of Santa Rosa, California, the Court found that a TRO could not be issued against the city because the plaintiffs had failed to make any showing to support municipal liability. *Martinez v. City of Santa Rosa*, No. 20-CV-04135-VC, 2020 WL 5074262, at *2 (N.D. Cal. Aug. 27, 2020). Here, as support for their allegations, Plaintiffs provided news articles quoting Mayor Duggan and Police Chief Craig. (ECF No. 4-15; ECF No. 4-16.) But the articles can cut both ways. For example, one article following the August 22nd incident quoted the police chief as saying he was "just ecstatic over the men and women in the Detroit Police Department," and praising the mayor for standing with the police. (ECF No. 4-16, PageID.234–235.) But in another article, the mayor makes clear that he would continue to support peaceful protests. (ECF No. 4-15, PageID.228.)

At this point, it is unclear whether there is any official policy or custom motivating the alleged constitutional violations carried out by individual police officers. But the video and testimonial evidence presented by Plaintiffs suggests that, on at least one occasion, police have used physical violence, and tear gas and pepper spray against peaceful protestors without provocation, and city officials have done nothing to condemn these actions. And the verified complaint contains allegations that police officers told arrestees on August 22 that the officers were "just following orders." (ECF No. 1, PageID.62.) This evidence leads to the inference that

8

Plaintiffs have a likelihood of success in establishing that unconstitutional conduct by police was carried out pursuant to an official policy or custom.

**B.**

In the case of an alleged constitutional violation, "the likelihood of success on the merits often will be the determinative factor." *Obama for America*, 697 F.3d at 436 (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). Plaintiffs have shown a likelihood of success on their First and Fourth Amendment claims. And thus irreparable injury has likely already occurred. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").[4]

The daily demonstrations in Detroit are ongoing. (ECF No. 4, PageID.182.) Without a TRO, there is nothing in the record that indicates that Plaintiffs will not experience further constitutional deprivations and even physical harm at the hands of the police. Because the Court finds that "a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).

**C.**

When considering the third factor, balance of equities, a court "must balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotations omitted).

The Court recognizes that police officers are often faced with dangerous and rapidly evolving situations while trying to enforce the law and maintain the safety of the public. And it is

---

[4] The Court would like to point out that the Plaintiffs' brief included a different quote from *Elrod v. Burns*. That quote does not actually appear in the opinion, nor does it appear in any other opinion on Westlaw.

9

important that police officers have non-lethal options to use to protect themselves and the public when necessary. But the relief that Plaintiffs request leaves open all lawful options for police to use reasonable force when necessary to defend against a threat and to make arrests when supported by probable cause. And any possible benefit police officers could gain from deploying chemical agents, projectiles, or striking weapons against demonstrators who pose no threat and are not resisting lawful commands is outweighed by the irreparable harm peaceful protestors would face.

### D.

The final factor, the public interest, also weighs in favor of an injunction. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994). Because the Plaintiffs have established a likelihood of success on the merits for their constitutional claims, an injunction to prevent further irreparable constitutional harm is in the public interest.

### E.

Finally, while the Court has conducted an independent analysis of the factors for temporary relief, and has focused on the particular facts of this case, the Court notes that in issuing a TRO, it joins the approach taken by its sister courts in a number of cities who have analyzed similar claims and issued similar injunctions. *See Don't Shoot Portland*, 2020 WL 3078329, at *4–5; *Black Lives Matter Seattle*, 2020 WL 3128299, at *5; *Abay*, 445 F. Supp. at 1294; *Anti Police-Terror Project v. City of Oakland*, No. 20-CV-03866-JCS, 2020 WL 4584185, at *17 (N.D. Cal. Aug. 10, 2020).

**IV.**

Considering the factors discussed above, the Court finds that temporary injunctive relief is warranted and GRANTS IN PART Plaintiffs' Motion for a Temporary Restraining Order. (ECF No. 4.)

For a period of 14 days, to be extended upon a showing of good cause, but not beyond 28 days absent consent by Defendants, the City of Detroit, including the Detroit Police Department, and all officers, agents, and departments under the Police Department's control (for purposes of this order, "the City") is enjoined from:

- Using striking weapons (including, but not limited to, batons and shields), chemical agents (including, but not limited to, tear gas and pepper spray), or rubber bullets against any individual peacefully engaging in protest or demonstrations who does not pose a physical threat to the safety of the public or police;
- Deploying chemical agents or a sound cannon against persons peacefully engaging in protest or demonstrations without an audible warning and a reasonable amount of time to disperse;
- Placing in a chokehold or ramming with a vehicle any individual attending a demonstration;
- Tightening the zip ties or handcuffs placed on any individual to the point that the restraints cause physical injury, including loss of circulation or change in color;
- Arresting any demonstrators en masse without probable cause.

In the event that Plaintiffs seek relief for an alleged violation of this Order, the City must respond to the motion for relief within 24 hours.

Because this is a non-commercial case, the balance of equities favor Plaintiffs, and there is no realistic likelihood of harm to Defendants from enjoining their conduct, the Court waives the security bond requirement.

SO ORDERED.

Dated: September 4, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
