UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DETROIT WILL BREATHE,**
**TRISTAN TAYLOR, NAKIA WALLACE,**
**JAZTEN BASS, LAUREN ROSEN, LAURYN**
**BRENNAN, AMY NAHABEDIAN, ZACHARY**
**KOLODZIEJ, LAUREN BRANCH,**
**LILLIAN ELLIS, OLIVIA PUENTE,**
**IMAN SALEH, MARGARET HENIGE,**
**CAYLEE ARNOLD,** and **ALEXANDER ANEST,**

Case No. 20-cv-12363
Hon: Laurie J. Michelson

            **Plaintiffs,**

| **PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM [ECF No.43]** |
| --- |

vs.

**CITY OF DETROIT,** a municipal corporation,
**MAYOR MICHAEL DUGGAN,** acting in his official
and individual capacities, **CHIEF JAMES CRAIG,** acting in his official
and individual capacities, **OFFICER STEPHEN ANOUTI, SERGEANT**
**TIMOTHY BARR**, **OFFICER DAVID HORNSHAW, OFFICER MARIAH**
**ERARD,** and **OFFICER DOES 1-100 inclusive,**
acting in their respective individual capacities, all jointly and severally,
            Defendants.

_____/

| | |
| --- | --- |
| Jack W. Schulz (P78078) | GOODMAN HURWITZ & JAMES, PC |
| Amanda M. Ghannam (P83065) | Julie H. Hurwitz (P34720) |
| SCHULZ LAW PLC | William H. Goodman (P14173) |
| PO Box 44855 | Melissa A. Brown (P79127) |
| Detroit, MI 48244 | 1394 E. Jefferson Ave. |
| (313) 246-3590 | Detroit, MI 48207 |
| jackwschulz@gmail.com | (313) 567-6170 |
| amandamghannam@gmail.com | jhurwitz@goodmanhurwitz.com |
| *On behalf of the National Lawyers* | bgoodman@goodmanhurwitz.com |
| *Guild, Detroit/Michigan Chapter* | mbrown@goodmanhurwitz.com |
| *Attorneys for Plaintiffs* | *On behalf of the National Lawyers* |
| | *Guild, Detroit/Michigan Chapter* |
| | *Co-counsel for Plaintiffs* |

1

Sean Riddell (P81302)
The Riddell Law Firm PLLC
400 Renaissance Center, Ste. 2600
Detroit, MI 48243
(313) 497-0074
sriddell@riddelllawfirm.com
*On behalf of the National Lawyers*
*Guild, Detroit/Michigan Chapter*
*Co-counsel for Plaintiffs*

CLARK HILL PLC
Reginald M. Turner (P40543)
Maria Fracassa Dwyer (P60946)
Christopher M. Trebilcock (P62101)
500 Woodward Ave., Ste. 3500
Detroit, MI 48226
(313) 965-8300
rturner@clarkhill.com
mdwyer@clarkhill.com
ctrebilcock@clarkhill.com
*Attorneys for Defendants*

Lawrence T. Garcia (P54890)
City of Detroit Law Department
2 Woodward Ave., Suite 500
Detroit, MI 48226
(313) 237-3018
garcial@detroitmi.gov
*Attorney for Defendants*

## PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM [ECF No.43]

Plaintiffs/Counter-Defendants, Detroit Will Breathe, Tristan Taylor, Nakia Wallace, Jazten Bass, Lauren Rosen, Lauryn Brennan, Amy Nahabedian, Zachary Kolodziej, Lauren "Graham" Branch, Lillian "Peatmoss" Ellis, Olivia Puente, Iman Saleh, Margaret Henige, Caylee Arnold, and Alexander Anest, by and through their attorneys, Schulz Law PLC, Goodman, Hurwitz, & James PC, and the Riddell Law Firm PLLC, and, pursuant to Fed. R. Civ. P. 12(b)(6), hereby move this Honorable Court to dismiss Defendants/Counter-Plaintiffs' Counterclaim in its entirety, and in support of their motion state:

1.     Plaintiffs began participating in and subsequently organizing demonstrations against racism and police brutality in the City of Detroit since May 29, 2020, after the murder of George Floyd by Minneapolis police officers sparked nationwide outrage.

2.     Rather than listen to demonstrators' calls for change, Defendants immediately attempted to silence and extinguish the demonstrations by means of excessive, unnecessary, and unlawful violence and force; they continue their efforts to silence dissent to this day.

3.     Over the course of the past five months of demonstrations, Defendants have tear-gassed, pepper-sprayed, and beaten nearly every Plaintiff; placed at least one Plaintiff, Nakia Wallace, in a dangerous and unlawful chokehold; shot at least one Plaintiff, Amy Nahabedian, with rubber bullets; caused long-lasting nerve damage to Plaintiff Zachary Kolodziej with overtightened zip ties and hearing loss to Plaintiff Lauren Rosen with the use of a deafening sound cannon; rammed into Plaintiff Jazten Bass with a police cruiser while he clung to the hood for dear life; and arrested the majority of the Plaintiffs, and hundreds of others, *en masse* without probable cause.

4.     On August 31, 2020, Plaintiffs/Counter-Defendants filed their Complaint (ECF No. 1) and Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction (ECF No. 4) in response to Defendants' unconstitutional

abuses of power, asserting violations of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. §1981.

5.    On September 4, 2020, the Court granted in part Plaintiffs' Motion for a TRO, enjoining Defendants from deploying a myriad of these tactics against demonstrators after this Court found that Plaintiffs demonstrated a likelihood of success on the merits of their First and Fourth Amendment claims and had already suffered irreparable harm in the form of threats to their constitutional rights.  (ECF No. 18).

6.    On September 10, 2020, Defendants filed a "Motion to Modify the TRO" (ECF No. 24), attempting to have this Court, instead, enjoin Plaintiffs from engaging in conduct for which they presented no "viable legal or factual basis," as stated by this Court in its Order dated September 16, 2020, denying Defendants' Motion (ECF No. 37).

7.    On September 18, 2020, this Court entered a Joint Order to Preserve the Status Quo which effectually converted the terms of the TRO into a Preliminary Injunction to remain in effect during the pendency of this case (ECF No. 42).

8.    The demonstrations have since continued – as have Defendants' endeavors to deter them.

9.    On September 25, 2020, Defendants/Counter-Plaintiffs filed their Answer to Plaintiffs' Complaint and, along with it, a Counterclaim count of "Civil

Conspiracy": a frivolous and transparent attempt to silence Plaintiffs in the courtroom, having failed to do so in the streets.

10.    Defendants/Counter-Plaintiffs' Counterclaim utterly fails to meet the pleading standard required by Fed.R.Civ.P. 8, as interpreted by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Their pleading consists entirely of vague and conclusory allegations – and outright misrepresentations — lacking the requisite specificity to support their lone claim.

11.    Defendants have failed to adequately plead the elements of civil conspiracy; they have not and cannot even assert, let alone establish, any requisite underlying tort. Their vague allegations of injury to police officers are both inadequately pled and barred by the "fireman's rule" doctrine. Although they seek a "declaratory judgment" that Plaintiffs/Counter-Defendants "defamed" Defendants/Counter-Plaintiffs Duggan, Craig and unnamed "Detroit Police Officers," they have completely failed to plead, let alone present any factual support, for such a cause of action.

12.    Further, Defendants' claim for civil conspiracy, even if it were coherent and actionable, is barred by the intra-corporate conspiracy doctrine.

13.    Plaintiffs sought concurrence for the relief requested in this motion pursuant to Local Rule 7.1; as of the time of filing, concurrence was not obtained.

For the reasons set forth above and discussed more fully in their Brief in Support,Plaintiffs/Counter-Defendants respectfully move this Court, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the Defendants' Counterclaim in its entirety, and for any other relief this Court may deem appropriate. Plaintiffs further rely on and incorporate by reference herein their Brief in Support of their Motion to Dismiss Defendants/Counter-Plaintiffs' Counterclaim.

Respectfully submitted,
By: */s/ Amanda M. Ghannam*

Amanda M. Ghannam (P83065)
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
amandamghannam@gmail.com
*On behalf of the National Lawyers*
*Guild, Detroit/Michigan Chapter*
*Attorneys for Plaintiffs*

GOODMAN HURWITZ & JAMES, PC
Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
Melissa A. Brown (P79127)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
mbrown@goodmanhurwitz.com
*On behalf of the National Lawyers Guild,*
*Detroit/Michigan Chapter*
*Co-counsel for Plaintiffs*

Sean Riddell (P81302)
The Riddell Law Firm PLLC
400 Renaissance Center, Ste. 2600
Detroit, MI 48243
(313) 497-0074
sriddell@riddelllawfirm.com
*On behalf of the National Lawyers Guild,*
*Detroit/Michigan Chapter*
*Co-counsel for Plaintiffs*

Dated: October 30, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DETROIT WILL BREATHE,**
**TRISTAN TAYLOR, NAKIA WALLACE,**          Case No. 20-cv-12363
**JAZTEN BASS, LAUREN ROSEN, LAURYN**       Hon: Laurie J. Michelson
**BRENNAN, AMY NAHABEDIAN, ZACHARY**
**KOLODZIEJ, LAUREN BRANCH,**
**LILLIAN ELLIS, OLIVIA PUENTE,**           ┌─────────────────────────┐
**IMAN SALEH, MARGARET HENIGE,**            │ **BRIEF IN SUPPORT OF**
**CAYLEE ARNOLD,** and **ALEXANDER ANEST,** │ **PLAINTIFFS/COUNTER-**
                                            │ **DEFENDANTS' MOTION**
           Plaintiffs,                      │ **TO DISMISS**
vs.                                         │ **COUNTERCLAIM**
                                            │ **[ECF No.43]**
                                            └─────────────────────────┘

**CITY OF DETROIT,** a municipal corporation,
**MAYOR MICHAEL DUGGAN,** acting in his official
and individual capacities, **CHIEF JAMES CRAIG,** acting in his official
and individual capacities, **OFFICER STEPHEN ANOUTI, SERGEANT**
**TIMOTHY BARR**, **OFFICER DAVID HORNSHAW, OFFICER MARIAH**
**ERARD,** and **OFFICER DOES 1-100 inclusive,**
acting in their respective individual capacities, all jointly and severally,

           Defendants.
_____/

| | |
|---|---|
| Jack W. Schulz (P78078) | GOODMAN HURWITZ & JAMES, PC |
| Amanda M. Ghannam (P83065) | Julie H. Hurwitz (P34720) |
| SCHULZ LAW PLC | William H. Goodman (P14173) |
| PO Box 44855 | Melissa A. Brown (P79127) |
| Detroit, MI 48244 | 1394 E. Jefferson Ave. |
| (313) 246-3590 | Detroit, MI 48207 |
| jackwschulz@gmail.com | (313) 567-6170 |
| amandamghannam@gmail.com | jhurwitz@goodmanhurwitz.com |
| *On behalf of the National Lawyers* | bgoodman@goodmanhurwitz.com |
| *Guild, Detroit/Michigan Chapter* | mbrown@goodmanhurwitz.com |
| *Attorneys for Plaintiffs* | *On behalf of the National Lawyers* |
| | *Guild, Detroit/Michigan Chapter* |
| | *Co-counsel for Plaintiffs* |

1

Sean Riddell (P81302)
THE RIDDELL LAW FIRM PLLC
400 Renaissance Center, Ste. 2600
Detroit, MI 48243
(313) 497-0074
sriddell@riddelllawfirm.com
*On behalf of the National Lawyers*
*Guild, Detroit/Michigan Chapter*
*Co-counsel for Plaintiffs*

CLARK HILL PLC
Reginald M. Turner (P40543)
Maria Fracassa Dwyer (P60946)
Christopher M. Trebilcock (P62101)
500 Woodward Ave., Ste. 3500
Detroit, MI 48226
(313) 965-8300
rturner@clarkhill.com
mdwyer@clarkhill.com
ctrebilcock@clarkhill.com
*Attorneys for Defendants*

Lawrence T. Garcia (P54890)
City of Detroit Law Department
2 Woodward Ave., Suite 500
Detroit, MI 48226
(313) 237-3018
garcial@detroitmi.gov
*Attorney for Defendants*

_____/

# BRIEF IN SUPPORT OF PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM [ECF No. 43]

# TABLE OF CONTENTS

INDEX OF AUTHORITIES......................................................................... ii

CONTROLLING AUTHORITIES..................................................................v

STATEMENT OF QUESTIONS PRESENTED......................................................vi

I.     INTRODUCTION ......................................................................1

II.    STATEMENT OF FACTS............................................................2

III.   ARGUMENT..........................................................................10

      a.   Legal Standard ..............................................................10

      b.   Defendants' Counterclaim Fails to State a Plausible Claim for
          Relief Under the *Twombly/Iqbal* Standard. .......................10

      c.   Defendants Have Failed to Establish a Civil Conspiracy.................15

      d.   Defendants Have Not Pled Any Valid Underlying Torts.................17

          i.   Any claim for injury to officers is barred by the
               Fireman's rule............................................................17

          ii.   Any claim for defamation is improperly pled and
               must fail....................................................................18

      e.   Actions By Unidentified Third Parties Cannot Form a
          Basis for Plaintiffs' Liability .............................................21

      f.   The Intra-Corporate Conspiracy Doctrine Bars Defendants'
          Claims .......................................................................23

IV.   CONCLUSION ......................................................................24

# <u>INDEX OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... *Id.*

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)...............................10

*Bible Believers v. Wayne* County, 805 F.3d 228 (6th Cir. 2018) ............................13

*Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969) ..........................................12,13

*Center for Bio–Ethical Reform, Inc.*, *et al.* v. *Napolitano*, *et al.*
  648 F.3d 365 (6th Cir. 2011)...................................................................11

*Childress v. Michalke,* No. 4:10-CV-11008, 2012 WL 762663
  (E.D. Mich. Mar. 9, 2012) (Goldsmith, J.) .............................................14

*Edwards v. Rougeau*, 736 Fed. Appx. 135 (6th Cir. 2018) .....................................14

*Ellis v. Chase Home Fin., LLC*, No. 14-11186, 2014 WL 7184457
  (E.D. Mich. Dec. 16, 2014) (Michaelson, J.)...........................................16

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004) .......................................................16

*Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir. 1987) .................................................14

*Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010) ..................................19

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*,
  926 F.2d 505 (6th Cir. 1991) .................................................................24

*Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837 (6th Cir. 1994)........................24

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)....................................23

*New York Times v. Sullivan*, 376 U.S. 254 (1964) .................................................20

*Nwanguma v. Trump,* 903 F.3d 604 (6th Cir. 2018)................................................13

*United States v. Turner*, 730 F.3d 411 (2nd Cir. 2013) ...........................................13

*Virginia v. Black,* 538 U.S. 343 (2003) ....................................................13

## Michigan Cases

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
  257 Mich. App. 365 (2003), aff'd, 472 Mich. 91 (2005) ......................................*Id.*

*Dickinson v. Limp Bizkit*, No. 244021, 2004 WL 1459357
  (Mich. App. Jun. 29, 2004) ...................................................................23

*Edwards Publications, Inc. v. Kasdorf,* No. 293617, 2011
  WL 1687622 (Mich. Ct. App. May 3, 2011) .........................................15

*Mitan v. Campbell,* 474 Mich. 21 (2005) ...............................................19

*Swain v. Morse*, No. 346850, 2020 WL 3107696
  (Mich. Ct. App. June 11, 2020) ..............................................................15

*Temborius v Slatkin*, 157 Mich. App. 587 (1986) ..................................21

*Tomkiewicz v. Detroit News, Inc*., 246 Mich. App. 662 (2001) ..............20

*Urbain v. Beierling*, 301 Mich. App. 114 (2013) ...................................15

## Court Rules

Fed.R.Civ.P. 8 ..........................................................................................4

Fed.R.Civ.P. 8(a)(2) .................................................................................10

Fed.R.Civ.P.12(b)(6)................................................................................*Id.*

## Statutes

M.C.L. 500.3135 .......................................................................................4

M.C.L. §600.2967 .....................................................................................17

M.C.L. §600.2967(1)(a)(v) ........................................................................18

# CONTROLLING AUTHORITY

Fed. R. Civ. P. 12(b)(6).............................................................................*Id.*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................*Id.*

*Bell Atlantic Corp. v.,* 550 U.S. 544 (2007)............................................10

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
  257 Mich. App. 365, 384 (2003), aff'd, 472 Mich. 91 (2005).............*Id.*

M.C.L. §600.2965-.2967

## **STATEMENT OF QUESTIONS PRESENTED**

1. Should this Court dismiss Defendants/Counter-Plaintiffs' Counterclaim, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Defendants have failed to sufficiently state a claim of civil conspiracy as required by Fed. R. Civ. P. 8 and the standard established by *Ashcroft v. Iqbal?*

   Plaintiffs/Counter-Defendants' answer: Yes.
   Defendants/Counter-Plaintiffs' answer: No.

## I.    <u>Introduction</u>

Since the May 25, 2020 murder of George Floyd by Minneapolis police officers, Plaintiffs/Counter-Defendants (hereafter "Plaintiffs"), along with thousands of others around the nation, have participated in regular demonstrations against police brutality and racism. Defendants/Counter-Plaintiffs (hereinafter "Defendants") have attempted to silence the demonstrations – to no avail – by physically attacking and arresting Plaintiffs and hundreds of others *en masse* without probable cause.

Now, deprived by Order of this Court (ECF No. 42) of their ability to silence Plaintiffs and others through the use of brute force and mass arrests, Defendants seek to chill Plaintiffs' speech through a frivolous Counterclaim alleging "Civil Conspiracy." (ECF No. 43, PageID.606-626). This must fail, as they have utterly failed to meet the well-established pleading standards required by *Ashcroft v. Iqbal* and its progeny. Defendants' counterclaim is woefully bereft of specific substantive facts. It is entirely unclear who they allege has engaged in a civil conspiracy, what they allegedly agreed to do, or how they allegedly conspired to do it. They have not pled any of the elements of civil conspiracy, nor can they establish an underlying tort; moreover, the fireman's rule and intra-corporate conspiracy doctrine bar their claims. For these reasons, the Counterclaim should be dismissed, pursuant to Fed.R.Civ.P.12(b)(6).

## II.   <u>Statement of Facts</u>

Plaintiffs incorporate by reference the factual allegations contained in their Verified Complaint (ECF No. 1) and Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 4).

Plaintiffs, along with thousands of others, have participated in well-attended peaceful demonstrations opposing police brutality since May 29, 2020. Defendant City of Detroit, acting through its police department ("DPD"), has continuously responded with violence and mass arrests without probable cause. Defendants' hostile response to these demonstrations is an intentional attempt to discourage demonstrators from attending future demonstrations and chill their First Amendment rights. For example, Plaintiff Lauren "Graham" Branch was brutally beaten and intimidated by DPD officers on May 29 – the day the demonstrations first began – and has not attended a demonstration since, due to a well-founded fear of being attacked and arrested again. (ECF No. 1, PageID.15-18).

On May 31, 2020, Defendant Mayor Michael Duggan announced a citywide curfew of 8:00 pm: a curfew that was enforced exclusively against Black Lives Matter demonstrators. That night, DPD officers shot Plaintiff Amy Nahabedian with a rubber bullet (*Id.,* PageID 30-34), and arrested Plaintiff Lillian Ellis, who was simply standing on the sidewalk (*Id.,* PageID 30-34); both, along with other Plaintiffs and hundreds of non-Plaintiffs who attended the demonstration, were also engulfed in tear

2

gas that DPD officers launched indiscriminately. (*Id.,* PageID.32)

DPD officers continued to respond to the ongoing demonstrations with excessive violence, regularly swarming and attacking demonstrators and deploying armored vehicles, an LRAD (Long Range Acoustic Device) sound cannon, dangerous chemical agents, batons, and shields. Between May 29 and June 2, 2020, more than 400 people were arrested for misdemeanors such as "disorderly conduct" and "disturbing the peace," despite a trove of video evidence showing demonstrators merely standing and chanting together as DPD officers descended upon them.[1]

Detroit Will Breathe ("DWB") formed as an organization on June 4, 2020.[2] Its priorities include such demands as "do not criminalize homeless people"; "substantial investment for mental health and substance abuse victims"; and "care for juveniles instead of jailing."[3] In pursuit of these goals, DWB has collaborated with other community organizations to organize and support each other's marches, meetings, movie nights in Detroit's parks, and other such events. DWB filed its Articles of Incorporation on or about June 23, 2020 as a domestic nonprofit corporation and has continued to organize events on a regular basis since. The events are open to the

---

[1] https://www.clickondetroit.com/video/video/2020/06/03/watch-multiple-arrests-made-at-protest-against-police-brutality-in-detroit-on-june-2-2020/

[2] https://detroitwillbreathe.info/events.html (see entry for June 4, 2020: "Detroit Will Breathe is formed." The organization's name highlights their belief in change and honors the late George Floyd, whose last words included "I can't breathe."

[3] See https://detroitwillbreathe.info/index.html.

public. DWB has no formal membership structure or program and does not assume liability for the actions of those who attend its events unless specific conditions are met.[4] Hundreds, if not thousands, of individuals have attended demonstrations both before and after DWB was formed as an organization.

Despite the fact that Detroit Will Breathe did not exist prior to June 4, 2020, Defendants blame it and its members for events that occurred between May 29—June 2, 2020. They claim vaguely and broadly that "protestors" threw things and engaged in violent and disorderly conduct during this time frame, but have neither identified any specific Plaintiff nor produced any evidence to support these claims.

In fact, on May 29, Plaintiff Lauren "Graham" Branch attended a demonstration as a medic, engaged in no violent or unlawful conduct whatsoever, and yet DPD tackled, arrested, and threatened them. (*Id.*, PageID.15-17) On May 31, Plaintiff Nahabedian was attempting to disperse when officers threw her to the ground, shoved her with their shields, launched tear gas canisters directly at her, and shot her near her heart with a rubber bullet. (*Id.*, PageID.31-33). Plaintiffs Lauren Rosen and Lillian

---

[4] See Article VIII of Detroit Will Breathe's publicly available Articles of Incorporation: "THE CORPORATION ASSUMES THE LIABILITY FOR ALL ACTS OR OMISSIONS OF A VOLUNTEER IF ALL OF THE FOLLOWING CONDITIONS ARE MET: 1. THE VOLUNTEER WAS ACTING OR REASONABLY BELIEVED HE OR SHE WAS ACTING WITHIN THE SCOPE OF HIS OR HER AUTHORITY. 2. THE VOLUNTEER WAS ACTING IN GOOD FAITH. 3. THE VOLUNTEER'S CONDUCT DID NOT AMOUNT TO GROSS NEGLIGENCE OR WILLFUL AND WANTON MISCONDUCT. 4. THE VOLUNTEER'S CONDUCT WAS NOT AN INTENTIONAL TORT. 5. THE VOLUNTEER'S CONDUCT WAS NOT A TORT ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A MOTOR VEHICLE FOR WHICH TORT LIABILITY MAY BE IMPOSED UNDER SECTION 3135 OF THE INSURANCE CODE OF 1956, 1956 PA 218, MCL 500.3135."

Ellis were merely standing among the demonstrators on June 2 when officers in riot gear, backed by tanks, boxed the marchers in, then descended upon them and began to seize, beat, and arrest them[5]. They damaged Lauren Rosen's hearing with the LRAD sound cannon and arrested Lillian Ellis. (*Id.*, PageID.45-49) Plaintiffs Jazten Bass and Tristan Taylor were both arrested and placed in excessively heated police vehicles. They were all met with brutal force for merely attending a protest. Further, Defendants have omitted the fact that Defendant Duggan revoked the curfew within a week, acknowledging that protests had been consistently peaceful[6]. Defendants do not affirmatively assert any specific facts to contradict those set forth herein. Although Defendants' factual allegations are insufficient to state a cause of action in their Counterclaim, they nonetheless make many representations which need to be addressed and corrected.

For example, contrary to Defendant's blatant misrepresentation, when discussing the newly formed organization's strategies, Plaintiff Nakia Wallace stated:

> I don't think that there's a space for Detroit Will Breathe **to condone or not condone violence**, right?  People are angry and people are going to express that anger.  Detroit Will Breathe has clearly set forward our program and what it is that we are doing.  But what we are never going to do is tell young people who are passionate and who are upset and who

---

[5] https://www.freep.com/story/news/local/michigan/detroit/2020/06/03/george-floyd-protests-anti-police-brutality/3127450001/ (video footage depicts officers going into nonviolent crowd and making mass arrests)

[6] https://www.metrotimes.com/news-hits/archives/2020/06/08/detroits-curfew-lifted-after-more-than-a-week-of-peaceful-protests-in-detroit

are angry that they don't have a right to be angry and they don't a right
to express that anger. Because this is what happens when you kill people.
This is what happens when you make it clear that life is indispensable to
you that particularly Black and brown lives don't matter. There's going
to be a price to pay for that.[7] (Emphasis added).

Defendants' consistent reliance on mischaracterizations to portray Plaintiffs as violent
– or even condoning violence -- cannot be overlooked.

Also, on June 28, 2020, Plaintiff Jazten Bass was unarmed and posed no threat
to the officer behind the wheel when a DPD officer accelerated his police SUV into
him, then continued to drive as Plaintiff Bass held onto the hood for dear life. As stated
in the Verified Complaint, demonstrators did not merely decide to surround the DPD
police car; they had no choice but to march past the line of police vehicles blocking
the street in order to return home. (ECF No.1, PageID.37) As they passed the vehicles,
an officer drove through the group and struck several demonstrators. Defendants'
version of events curiously omits that the officer accelerated wildly once he had
Plaintiff Bass on the hood of his car[8], using potentially deadly force and leaving
Plaintiff Bass with no choice but to grab onto the hood or get run over. Police, not
Plaintiffs, instigated violence that day.

Similarly, it cannot be disputed that Plaintiff Lauryn Brennan had not

---

[7] See Interview, Fox2 News at 2:44 (June 15, 2020), https://www.fox2detroit.com/
video/696779, which was misquoted and used entirely out of context by Defendants
at Paragraph 26 of their Counterclaim. (ECF No.43, PageID.610).
[8] https://www.youtube.com/watch?v=qiKv85jUUaQ (Click on Detroit Local 4 report;
0:52-1:02 contains relevant footage of driver accelerating.)

approached, thrown anything at, or posed a threat to Defendant Mariah Erard or any other officer when Erard beat her with a baton on July 10, 2020. Nor did the other Plaintiffs who attended the demonstration. Yet DPD officers brutally beat, shoved, arrested and/or tear-gassed each of them that day as they exercised their First Amendment rights (including the use of expletives such as "Fuck you" towards police officers – well-settled protected speech). No named Plaintiff is even alleged to have thrown anything at police. In fact, as clearly shown in the photograph below, Plaintiff Margaret Henige was attempting to calm and hold back the crowd:



While such facts do not serve Defendants' narrative, they simply cannot be ignored.

And while Defendants now egregiously accuse Plaintiff Wallace of "falsely" stating that she was placed in a chokehold, (ECF No.43, PageID.618) – despite graphic corroborating evidence -- and mischaracterize the chokehold as being caused by her causing the officer's "arms to momentarily touch her neck," (*Id.*, PageID.616), they

cannot dispute that the chokehold used on Nakia Wallace was severe enough to warrant an investigation and an inquiry by Detroit's City Council.[9]

Finally, on August 22, as the police approached DWB's nonviolent gathering – which, according to Defendants themselves, was a lawful assembly until well into the night, when DPD spontaneously decided it wasn't (*see* ECF No. 43, PageID.622) -- Plaintiff Tristan Taylor announced:

> "So, as they approach, we just should lock arms, if people feel like it, we can lock arms to bring ourselves together…We should make sure that we're tight right next to each other, because we're going to stand together and make them have to show themselves as the brutal force that they are…We got this, y'all. We're in it together. This is the right thing to do"[10] –

This is a far cry from any incitement to violence. Video footage clearly shows DPD officers launch chemical agents from afar, then rush into the crowd and begin to tackle, beat, and shove the peaceful demonstrators with unnecessary force and no provocation at all.[11] Defendants' set of alternative facts – that the events of August 22 were set in motion when protestors surrounded DPD and began to shout at them – is demonstrably and egregiously false, as exemplified by what happened to Plaintiffs

---

[9] https://www.clickondetroit.com/news/local/2020/07/13/dpd-launches-investigation-into-officers-use-of-a-chokehold-on-protester/; *See also* http://video.detroitmi.gov/CablecastPublicSite/show/8609?channel=1 (Detroit City Council meeting addressing the chokehold and use of excessive force generally)
[10] https://www.facebook.com/detroitwillbreathe/videos/1705988949548480/ (Tristan Taylor addresses the crowd @ 17:50).
[11] https://www.facebook.com/detroitwillbreathe/videos/715524548995720/.
(As demonstrators stand together, officers approach, launch tear gas, rush into crowd, and beat, shove, and arrest demonstrators.)

Alex Anest and Caylee Arnold. As Plaintiff Anest was approaching another medic to offer help an officer struck him from behind with a baton, cracking his rib and puncturing his lung. (*See* ECF No.1, PageID.27-30). Plaintiff Arnold had already been arrested and was held down by multiple officers when another officer pepper-sprayed her face for so long that her mask and goggles were filled with the chemical. (*Id.,* PageID.43-44). This conduct flies in the face of Defendants' unsupported claim that Plaintiffs were the ones engaging in unchecked violence.

As to Defendants' allegations regarding "Activity on September 5, 2020," (ECF No. 43, PageID.624), after the issuance of the TRO, Defendants attribute the alleged spray-painting of a statue to unidentified individuals "involved in Plaintiffs' organized demonstration." (*Id.*) But they fail to allege how the unidentified individuals – who are not Plaintiffs -- were affiliated with or involved in DWB's demonstration to any further extent than that they happened to be in the same place at the same time. In any event, the spray paint was removed within a day.

There is no allegation, let alone any evidence – as this Court noted in its Order on Defendants' Motion to Modify TRO [24], (ECF No. 37) -- that any significant property damage occurred or that any Defendant sustained any injury or damage as a result of the demonstrations. Since this Court's TRO/Preliminary Injunction has been in place, demonstrators have continued to peacefully protest: further evidence that earlier incidents of violence were instigated by officers, not demonstrators. Over 150

days of demonstrations to date have remained overwhelmingly peaceful in spite of – not because of – the unrestrained actions of Defendants.

### III.   <u>Argument</u>

#### a.  <u>Legal Standard</u>

It is well-established that in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955). The pleading standard under Fed. R. Civ. P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

#### b.  <u>Defendants' Counterclaim Fails to State a Plausible Claim for Relief Under the *Twombly/Iqbal* Standard.</u>

Since the U.S. Supreme Court rulings in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), it has been well settled that while a complaint (or counter-claim) need not include "detailed factual allegations," *Twombly,* 550 U.S. at 555, it does require that the facts alleged "state a claim to relief that is plausible on its face." *Id.* at 570. As the court in *Iqbal* further clarified:

> A claim has facial plausibility when the [pleaded] factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly*]*,* at 556…

*Iqbal,* 556 U.S. at 679.

In order to assess the viability of any complaint brought in federal court, it is thus essential to first scrutinize the factual allegations that underpin the complaint within the constraints and under the demands of *Iqbal* and *Twombly*. *Iqbal* tests the sufficiency of the factual allegations of a complaint insofar as the alleged facts either do or do not support the legal cause of action being asserted. The court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief*." Iqbal* at p. 681. *See also*, e.g. *Center for Bio–Ethical Reform, Inc*., *et al.* v. *Napolitano*, *et al.*, 648 F.3d 365 (6th Cir. 2011).

In this case, Defendants' sole cause of action in their Counterclaim is "civil conspiracy," the elements of which require a showing of a "…combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Kerrigan v. ViSalus, Inc*, 112 F.Supp.3d. 580, 616 (E.D. Mich. 2015). *See also Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003), aff'd, 472 Mich. 91 (2005) (dismissing conspiracy claims where plaintiffs failed to state a prima facie case of tortious interference as an underlying tort for their conspiracy claim). Importantly – and to Defendants' counterclaim, fatally - a civil conspiracy "may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Id.*

A careful review of Defendants' allegations reveals that not only do they fail to

assert the prerequisite underlying actionable tort (discussed *infra*), their counterclaim fails to assert facts sufficient to state a claim of civil conspiracy that is plausible under *Iqbal.* A few notable examples of Defendants' vague factual allegations are as follows:

1. That Plaintiffs have "participated" in and "attended" "demonstrations" [ECF No. 43, PageID.607, 608, 610-612, 615; ¶¶ 5, 12, 28, 33, 39, 63] (all of said conduct is lawfully protected speech under the First Amendment and thus neither criminal nor unlawful)

2. That the protests turned "violent" [ECF No. 43, PageID.608, 611; ¶¶13-15, 29] (nowhere are any named Plaintiffs identified as having either so acted or conspired with anyone else to so act);

3. That dangerous projectiles were "hurled" at police officers [ECF No. 43, PageID.611-612, 615-617, ¶¶ 29, 30, 37, 38, 66, 69, 83] (nowhere are any named Plaintiffs identified as having "hurled" or "thrown" any objects at any officers -- much less at any of the named Defendant officers – nor is there any factual assertion that would allow this Court to draw the reasonable inference that any of the Plaintiffs conspired to so act);

4. That busy streets and school buses were blocked and violent behavior "encouraged" [ECF No. 43, PageID.608, 621-622, ¶¶ 14, 106, 107, 109] (Defendants fail to assert any facts identifying any of the Plaintiffs engaging in such conduct or "encouraging anyone to engage in violent behavior);

5. That DPD officers were screamed at, [ECF No. 43, PageID.608, 613, 616; ¶¶ 14, 53, 75]**,** that DPD directives were refused to be followed, [ECF No. 43, PageID.608, 613, ¶¶ 14, 46]**,** and public property was destroyed and defaced [ECF No. 43, PageID.608, ¶¶ 14, 132-134] (Defendants neither identify any named Plaintiff who so acted nor set forth any factual basis for accusing them conspiring to so act);

6. That Plaintiff DWB has encouraged participation in these protests [ECF No. 43, PageID.614, ¶ 60] (As a matter of law, encouraging others to participate in peaceful protest is protected speech under the First Amendment, *Brandenburg v. Ohio*, 395 US 444 (1969), and is neither criminal nor unlawful. Nowhere do Defendants assert a single fact of any statement

urging either violence -- as distinguished from militant protest[12] -- or targeting any specific Defendant;

7.  That Plaintiffs have published "false statements" [ECF No. 43, PageID.608, 617-620, 624; ¶¶ 15, 87, 88, 89, 93, 97, 98, 99, 100, 122] (Yet, Defendants fail to specifically indicate how said statements, even if, *arguendo*, they were false – which they were not – were part of any alleged conspiracy to commit violent acts or had any causal link to any violent conduct; rather, all alleged "false statements" were fully constitutionally protected expressions of either fact or opinion regarding the actions and deficiencies of public officials, while acting in the public forum); and,

8.  That plaintiffs "conspired" to commit all of these acts [ECF No. 43, PageID.625, ¶¶ 132-134] (Yet other than the bare conclusory allegations of "conspiracy," they fail to assert any specific factual allegation as to when the conspiracy was agreed upon, who specifically so agreed, what were the terms of the agreement, and the ultimate illegal purpose of said conspiracy.)

In each of the above examples, there is a massive insufficiency of factual specificity from which the Court can ascertain the basis for a claim.  As the Court in *Iqbal* made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to require the trial court to accept those allegations as true. *Iqbal,* 556 U.S. at 678.  Defendants have failed to specify

---

[12]  It is well settled that there is a vast difference between "militance" and "violence," and that even had any of Plaintiff expressed support for violence – of which there is no evidence or plausibly pled allegation in this case – without actually "…preparing a group for violent action and steering it to such action", it is protected by the First and Fourteenth Amendments. *Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969); *Virginia v. Black,* 538 U.S. 343, 359–60 (2003); *United States v. Turner*, 730 F.3d 411, 421 (2nd Cir. 2013). *See also Nwanguma v. Trump,* 903 F.3d 604, 609-610 (6th Cir. 2018) (holding that even if a speech triggers a predictably violent reaction—for which there is no evidence of having occurred here -- the speech is protected so long as it does not specifically advocate violence, citing *Bible Believers v. Wayne County*, 805 F.3d 228(6th Cir. 2018).)

which Plaintiff, if any, engaged in what acts of misconduct; in what manner; which Defendants suffered injury or damage; or what injuries or damages were inflicted.

It is well settled that a claim is sufficient only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Here, the Counterclaim is devoid of any specifics as to the content of the agreement that must be at the center of any alleged conspiracy, let alone the identity of the alleged conspirators.  As Judge Goldsmith ruled in 2012 in *Childress v. Michalke,* No. 4:10-CV-11008, 2012 WL 762663 (E.D. Mich. Mar. 9, 2012) (Goldsmith, J.), **[Exh. 1]**, another civil conspiracy case filed in this Court:

> "[C]onspiracy claims must be pled with some degree of specificity ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch,* 826 F.2d 1534, 1539 (6th Cir. 1987). Here, Plaintiff does not identify how or when the conspiracy took place or what facts support the conclusion that there was a conspiracy at all.
>
> *Id.,* at *4.

Where, as here, the Counterclaim lacks sufficient detail to allege a coherent claim, it lacks plausibility, a clear requirement of *Iqbal.* See also *Edwards v. Rougeau*, 736 Fed. Appx. 135 (6th Cir. 2018).

Finally, although Defendants' Counterclaim names each individual Plaintiff as a Counter-Defendant, it fails to mention *any* conduct attributable to anyone besides Tristan Taylor, Nakia Wallace, and Jazten Bass—aside from simply being in attendance on specific dates or allegedly refusing a police order. Defendants make no reference to any specific conduct by Plaintiffs Rosen, Brennan, Nahabedian, Branch,

Ellis, Saleh, Arnold, or Anest, other than attending demonstrations. As to Plaintiffs Puente and Henige, Defendants vaguely state that they refused to disperse but neither was charged with any related crime. Thus, there is no coherent basis for a claim of conspiracy as to these individual Plaintiffs.

### c.   Defendants Have Failed to Establish a Civil Conspiracy.

Defendants cannot sufficiently plead a civil conspiracy claim under Michigan law because they fail to assert any actionable underlying tort the Plaintiffs allegedly conspired to commit. Liability cannot arise from a civil conspiracy alone; "rather, it is necessary to prove (and plead) a separate, actionable tort." *Advocacy Organization for Patient. & Providers*, 257 Mich. App. at 384 (2003); see also *Swain v. Morse*, No. 346850, 2020 WL 3107696, fn. 12 (Mich. Ct. App. June 11, 2020). **[Exh. 2]**. As iterated by this Court in *Kerrigan, supra*:

> A civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Urbain v. Beierling*, 301 Mich. App. 114, 835 N.W.2d 455, 463 (2013). **Importantly, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort."** *Advocacy Org. for Patients and Providers v. Auto Club Ins.* Ass'n, 257 Mich.App. 365, 670 N.W.2d 569, 580 (2003). Accordingly, **where a Plaintiff has not separately pleaded a viable tort claim, dismissal of the Plaintiff's civil conspiracy claim is appropriate**.

> *Id.,* at 616. (Emphasis added.)

> See also *Edwards Publications, Inc. v. Kasdorf,* No. 293617, 2011 WL 1687622

at *2 (Mich. Ct. App. May 3, 2011) (case remanded for a new trial because of an

inconsistent verdict where the jury found "no cause of action" on the underlying tort and "liability" for the civil conspiracy claim; where there is no liability for the underlying tort, there can be no liability for civil conspiracy) **[Exh. 3]**; *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts…" are insufficient to state a claim).

In the present case, Defendants' assertion of a civil conspiracy claim without alleging a "separate, actionable tort," mandates the dismissal of their claim. The Counterclaim alleges absolutely no separate actionable torts that the Plaintiffs-Counter Defendants purportedly conspired to commit. The civil conspiracy claim "exists in the air" and must fail. *Advocacy Org., supra.*

This Court has previously reached the same conclusion, holding that where no other tort claims exist, "the court must dismiss the civil conspiracy claim… because civil conspiracy, by itself, is not a cause of action." *Ellis v. Chase Home Fin., LLC*, No. 14-11186, 2014 WL 7184457, at *12 (J. Michaelson, E.D. Mich. Dec. 16, 2014) (internal quotations omitted). **[Exh. 4]**. Here, as in *Ellis*, Defendants have no tort claim and no reasonable inference can be made to support an underlying tort. Defendants merely recite various statements attributable to three out of fourteen plaintiffs (and a number of non-parties) – statements which are all not only lawful, but protected by the First Amendment. As an underlying tort is required to sustain a civil conspiracy

complaint, Defendants' claim "exists in the air," and must be dismissed.

### d. **Defendants Have Not Pled Any Valid Underlying Torts.**

While Defendants have failed to plead an underlying tort to support their claim for civil conspiracy, any tort that could possibly be inferred from their pleading would fail as a matter of law.

#### i. **Any claim for injury to officers is barred by the fireman's rule.**

Any claim by the DPD officers for alleged injury to them is barred by M.C.L. §600.2965-.2967, otherwise known as the "fireman's rule," which regulates the circumstances under which a police officer may sue in tort for injury or death arising from normal, inherent, and foreseeable risks of the profession.  The relevant part of the statute provides:

> (1) …[A] … police officer who seeks to recover damages for injury or death arising from the normal, inherent, and foreseeable risks of his or her profession while acting in his or her official capacity must prove that 1 or more of the following circumstances are present:
>> (a) An injury or resulting death that is a basis for the cause of action was caused by a person's conduct and that conduct is 1 or more of the following:
>>> (i) Grossly negligent.
>>> (ii) Wanton.
>>> (iii) Willful.
>>> (iv) Intentional.
>>> (v) Conduct that results in a conviction, guilty plea, or plea of no contest to a crime under state or federal law, or a local criminal ordinance that substantially corresponds to a crime under state law.

M.C.L. §600.2967.

In this case, in support of their sole cause of action for civil conspiracy, Defendants allege that "protestors" (not Plaintiffs) "hurled objects" at unidentified DPD officers, that unidentified DPD officers sustained injuries while arresting protestors (not Plaintiffs), and that Plaintiffs (again, without specifying which Plaintiffs) "conspired to disturb the peace, engage in disorderly conduct, incite riots, destroy public property, resist or obstruct officers in charge of duty, or otherwise commit acts of violence against Counter-Plaintiffs and DPD officers," (again without specifying which Counter-Plaintiffs or DPD officers, and with no specific factual support whatsoever). *See* ECF No. 43, PageID.625. These allegations describe criminal conduct. Michigan law prohibits a police officer's suit in tort for criminal conduct unless it is "[c]onduct that results in a conviction, guilty plea, or plea of no contest to a crime under state or federal law, or a local criminal ordinance that substantially corresponds to a crime under state law." M.C.L. §600.2967(1)(a)(v). No Plaintiff has been convicted of, pled guilty to, or pled no contest to any criminal charges arising out of the demonstrations at issue.  Therefore, the fireman's rule bars the DPD officers' counterclaim.

### ii.  Any claim for defamation is improperly pled and must fail.

Though neither pled as a cause of action nor factually supported anywhere in their Counterclaim, it appears that Defendants also seek some sort of "declaratory judgment" for alleged "defamation" of Defendants Craig, Duggan, and unnamed

Police Officers.  (ECF No.43, PageID.626). But there is no support for such a claim.

The elements of defamation under Michigan law are "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell,* 474 Mich. 21, 24 (2005). Not one element has been properly pled here.

Defendants state, in an unsupported and conclusory allegation, that Plaintiffs (without identifying which Plaintiffs) have "published numerous false statements" about Defendants Craig, Duggan, and DPD officers. (ECF No.43, PageId.608). Yet Defendants have not pled that defamatory statements were made; that any statements made were not privileged; that the requisite level of fault existed; or that any Defendant sustained any damages as a result. They identify only a handful of purportedly false statements allegedly made by Plaintiffs Bass, Wallace and Taylor,[13] regarding the need for reform in policing and acts of violence perpetrated upon them by DPD officers – all statements indisputably protected by the First Amendment.

It is well settled in the Sixth Circuit "...that private citizens have a First Amendment right to criticize public officials and to be free from retaliation for doing

---

[13] Defendants also inexplicably accuse a Mr. "Yusuf Shaku" of making a false statement, identifying him as "Counter-Defendant DWB member." This individual is neither a party to this litigation nor a member of Detroit Will Breathe.

so." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). Moreover, "even false statements concerning public officials are protected by the First Amendment unless they were made with actual malice." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964). This applies to the Chief, the Mayor, and the individual officers. *Tomkiewicz v. Detroit News, Inc*., 246 Mich. App. 662, 671 (2001) (lower ranking law enforcement officers and police lieutenants are public officials for purposes of applying the *New York Times* privilege). Actual malice cannot be shown by preconceived objectives, insufficient investigation, ill will, spite, or even hatred. *Tomkiewicz* at 677. This element has not been pled by Defendants at all, let alone supported with any specific factual allegation as required under *Iqbal.*

The same goes for the final element of damages. Defendants state only that "all statements made by Counter-Defendants have hindered Counter-Plaintiffs' ability to adequately protect public safety and serve Detroit citizens." (ECF No.43, PageID.624) Not only do Defendants, again, fail to identify the parties or how exactly they have sustained their asserted damages, their pleading is completely devoid of any factual support for this conclusion.

By Defendants' standard, any victim of police brutality, any concerned citizen voicing an opinion about police conduct, or for that matter any citizen who opposes any governmental policy, is guilty of defamation. The implications raise highly disturbing First Amendment concerns.

Finally, even if Plaintiffs Bass, Taylor, and Wallace had "defamed" these governmental Defendants – which they have not – Defendants have not alleged that any Plaintiff conspired to defame any Defendant, and even if Defendant had pled such a thing, the intra-corporate conspiracy doctrine would bar the claim.

### e. Actions By Unidentified Third Parties Cannot Form a Basis for Plaintiffs' Liability.

Any aspect of Defendants' Counterclaim that relies on actions by unnamed third parties must be dismissed for failing to state a claim. Throughout their pleadings, Defendants make sensational claims of unnamed and unidentified third parties engaging in violence or unlawful conduct, attempting to discredit Plaintiffs by blaming them for these actions.[14] Yet Defendants have alleged at best a tenuous connection between Plaintiffs and these third parties, and fail to allege any grounds for liability for their conduct.

Under Defendants' only stated theory of liability — conspiracy — Plaintiffs cannot be liable for the conduct of third parties. Even if civil conspiracy could stand

---

[14] Specifically, Defendants allege that on May 29 and May 31, some, but not all, Plaintiffs attended a protest. They then allege that on these dates, protestors— but not Plaintiffs —threw things at police. Likewise, Defendants allege that on July 10, Plaintiff Detroit Will Breathe issued a statement on social media urging people to gather at 7446 McNichols Road in response to the police shooting of Hakim Littleton. They further allege that some, but not all, Plaintiffs attended. They then again allege that protestors—but once again, not Plaintiffs — threw things at police. Finally, Defendants allege that on September 5, two individuals— but not Plaintiffs — spray painted "slave owner land thief" on a statue, and other protestors—but once again not counter defendants—are alleged to have stood on a barrier outside a restaurant.

as its own claim, Defendants fail to allege that Plaintiffs and these unnamed third parties entered into any agreement whatsoever, let alone a preconceived plan to commit an unlawful act. *See*, *e.g.*, *Temborius v Slatkin*, 157 Mich. App. 587, 600 (1986) (for a civil conspiracy, an "agreement, or preconceived plan, to do the unlawful act is the thing which must be proved"). Further, Defendants include several comments by individuals[15] who are not parties to this lawsuit, without any reasonable explanation as to how they are attributable to the Plaintiffs. (ECF No.43, PageID.610,618,619).

More fundamentally, Defendants have failed to plead (and Michigan law does not recognize) any grounds for holding Plaintiffs liable for the actions of these unnamed third parties. For most of the Plaintiffs and unnamed third parties, their only alleged connection is being physically present at the same place and time. As to May 29 and May 31, the Counterclaim alleges that unnamed third parties -- not Plaintiffs – threw objects at the police, and that the only connection to Plaintiffs is that some of them were present at that protest at some point on the same date. (*Id.,* PageID.610)

As to July 10, all Defendants allege is that Plaintiffs Kolodziej, Brennan, Puente, and Henige attended the protest where these things happened, and nothing more. (*See id.,*PageID.615). As to September 5, there are no allegations that any

---

[15] The non-party individuals named are Yusef Shaku (¶ 90) and Lloyd Simpson (¶ 93).

Plaintiffs were present. (*See id.,* PageID.624). In fact, the only allegation beside physical presence connecting Plaintiff DWB and the actions of unnamed third parties on July 10 and September 5, is that DWB made public statements calling for protests on these dates. (*Id.,* PageID.621-624). Yet, merely calling for a demonstration does not give DWB or its officers any control over members of the public who made the individual, independent choice to go to the locations where DWB organized events. *See*, *e.g.*, *Dickinson v. Limp Bizkit,* No. 244021, 2004 WL 1459357 (Mich. App. Jun. 29, 2004) at *3-*5. **[Exh. 5]**. Protests, by their very nature, involve "a host of voluntary decisions by free citizens." *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 888 (1982).

Because Defendants have not alleged, and cannot prove, that any Plaintiffs conspired to engage or did engage in the conduct described, Plaintiffs cannot, as a matter of law, be held liable for the actions of unnamed third parties alleged in the Counterclaim.

### f.  <u>The Intra-Corporate Conspiracy Doctrine Bars Defendants' Claims.</u>

Finally, even assuming *arguendo* that Defendants adequately pled an underlying tort, Defendants' civil conspiracy claim against DWB and its members is barred by the intra-corporate conspiracy doctrine. Under this well-established doctrine, a corporation cannot conspire with its own agents or employees; if Defendants are members of the same collective entity, there are not two separate

'people' to form a conspiracy. *Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839–40 (6th Cir. 1994) (internal quotation marks and citations omitted); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) ("this court has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees.")

Defendants here have pled that Plaintiffs Taylor, Wallace and Bass are members of Detroit Will Breathe; thus, those three individuals could not, as a matter of law, be liable for a civil conspiracy here at all. Those three individuals are also the only Plaintiffs who Defendants allege have engaged in any specific conduct besides attending a demonstration or made any "defamatory" statements. (ECF No.43, PageId.608). Thus, in addition to the pleading's insufficiency, the intra-corporate conspiracy doctrine mandates the dismissal of a claim for civil conspiracy arising out of any alleged defamation claim that could be extracted from the bare bones of Defendants' pleading.

## IV.   Conclusion

Wherefore, for the reasons stated above, Plaintiffs/Counter-Defendants respectfully move this Honorable Court to dismiss Defendants/Counter-Plaintiffs' Counterclaim in its entirety, award Plaintiffs/Counter-Defendants' costs and attorneys' fees incurred in responding to Defendants/Counter-Plaintiffs' Counterclaim, and grant any further relief as this Court may deem just and proper.

Respectfully submitted,

By: */s/ Amanda M. Ghannam*

Amanda M. Ghannam (P83065)
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
amandamghannam@gmail.com
*On behalf of the National Lawyers*
*Guild, Detroit/Michigan Chapter*
*Attorneys for Plaintiffs*

GOODMAN HURWITZ & JAMES, PC
Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
Melissa A. Brown (P79127)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
mbrown@goodmanhurwitz.com
*On behalf of the National Lawyers Guild,*
*Detroit/Michigan Chapter*
*Co-counsel for Plaintiffs*

Sean Riddell (P81302)
The Riddell Law Firm PLLC
400 Renaissance Center, Ste. 2600
Detroit, MI 48243
(313) 497-0074
sriddell@riddelllawfirm.com
*On behalf of the National Lawyers Guild,*
*Detroit/Michigan Chapter*
*Co-counsel for Plaintiffs*

Dated: October 30, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2020, I electronically filed the foregoing **PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM** and **BRIEF IN SUPPORT OF MOTION** with the Clerk of the Court using the ECF system which will send notification to all counsel of appearance.

*/s/  Amanda M. Ghannam*