UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DETROIT WILL BREATHE,**
**TRISTAN TAYLOR, NAKIA WALLACE,**          Case No. 2:20-cv-12363
**JAZTEN BASS, LAUREN ROSEN, LAURYN**          Hon: Laurie J. Michelson
**BRENNAN, AMY NAHABEDIAN, ZACHARY**
**KOLODZIEJ, LAUREN BRANCH,**
**LILLIAN ELLIS, OLIVIA PUENTE,**
**IMAN SALEH, MARGARET HENIGE,**
**CAYLEE ARNOLD,** and **ALEXANDER ANEST,**

       Plaintiffs,
vs.

**CITY OF DETROIT,** a municipal corporation,
**MAYOR MICHAEL DUGGAN,** acting in his official
and individual capacities, **CHIEF JAMES CRAIG,** acting in his official
and individual capacitiej, **OFFICER STEPHEN ANOUTI, SERGEANT**
**TIMOTHY BARR, OFFICER DAVID HORNSHAW, OFFICER MARIAH**
**ERARD,** and **OFFICER DOES 1-100 inclusive,**
acting in their respective individual capacities, all jointly and severally,

       Defendants.
_____/

**DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE IN**
**OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS'**
**MOTION TO DISMISS COUNTERCLAIM**

i

# TABLE OF CONTENTS

DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE IN ...................................................... i

OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS' ................................................. i

MOTION TO DISMISS COUNTERCLAIM ........................................................................... i

TABLE OF CONTENTS ....................................................................................................... i

INDEX OF AUTHORITIES ................................................................................................... ii

ISSUES PRESENTED ........................................................................................................... iii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

LEGAL ARGUMENT .......................................................................................................... 5

I.       DEFENDANTS HAVE ADEQUATELY PLEAD A CLAIM OF CIVIL CONSPIRACY.
         ............................................................................................................................. 5

    A.    Pleading Standard ..................................................................................... 5

    B.    Defendants have adequately pled a claim of civil conspiracy. ...................... 6

        1. An agreement existed among Plaintiffs to attend the protests and engage in unlawful
           behavior. ................................................................................................ 7

        2. Plaintiffs engaged in unlawful activity as planned. ................................... 9

II.      The First Amendment is not a Shield for Conspiring to Engage in Unlawful Activity ...... 9

III.     RELIANCE ON THE FIRST AMENDMENT IS MISPLACED. ................................. 11

    A.    Whether Defendants have successfully pled defamation is irrelevant to their
          counterclaim. ............................................................................................. 11

    B.    Amici's focus on First Amendment speech rights is inapposite. .................... 12

IV.      DEFENDANTS DO NOT RELY ON UNIDENTIFIED THIRD PARTIES TO FORM
         THE BASIS FOR PLAINTIFFS' LIABILITY. ............................................................. 14

V.       THE INTRA-CORPORATE DOCTRINE DOES NOT BAR DEFENDANTS' CLAIMS.
         ............................................................................................................................. 16

VI.      THE FIREMAN'S RULE DOES NOT PRECLUDE DEFENDANTS' CLAIM OF
         CIVIL CONSPIRACY ............................................................................................... 19

VII.     THE NOERR-PENNINGTON DOCTRINE DOES NOT IMMUNIZE PLAINTIFFS'
         ACTIONS. ................................................................................................................ 21

CONCLUSION ..................................................................................................................... 23

# INDEX OF AUTHORITIES

**Cases**

*Admiral Ins. Co. v. Columbia Casualty Ins. Co.,* 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992) ............................................................................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................ 5

*Bacon v. Subway Sandwiches & Salads LLC*, 2015 WL 729632, at *5 (E.D. Tenn. Feb. 19, 2015) ............................................................................................................................ 18

*Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) ............................ 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 14

*Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) ........................... 21

*Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995) ............................... 6

*Ctr. for BioEthical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ..................... 2

*Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir. 1985) ......................................................... 6, 7

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) ............................................................................................................................ 17

*Iqbal*, 556 U.S. 662 (2009) ..................................................................................................... 15

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) ............................. 17, 18

*N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, (1982) ............................ 1, 10, 22

*Northstar Energy LLC v. Encana Corp.*, 2014 WL 5343423, at *3 (W.D. Mich. Mar. 10, 2014). 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) ....................... 22

*Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228 (6th Cir. 1997) ............................................... 6

*Saldana v. Smith*, 2000 WL 33417387, at *1-2 (Mich. Ct. App. July 11, 2000) ......................... 20

*Samuels v. Mackell*, 401 U.S. 66, 75 ........................................................................................ 1

*Tull v. WTF, Inc.*, 706 N.W.2d 439, 443, 445-46 (2005) .......................................................... 20

*VIBO Corp. v. Conway*, 669 F.3d 675, 685–86 (6th Cir. 2012) ................................................ 23

**Statutes**

M.C.L. § 600.2967 .............................................................................................................. 19, 20

**Other Authorities**

Civil Rights Act (42 U.S.C. 1985(3) .......................................................................................... 17

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................... 1, 5

Fed. R. Pro. Civ. 8 ................................................................................................................... 5

Rule 12(b)(6) ........................................................................................................................ 5, 6

## ISSUES PRESENTED

1.      Whether Defendants have pled facts demonstrating a civil conspiracy sufficient to survive a Motion to Dismiss?

Defendants state:   Yes.

# INTRODUCTION

"Certainly violence has no sanctuary in the First Amendment, and the use of weapons, gunpowder, and gasoline may not constitutionally masquerade under the guise of 'advocacy.'" *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, (1982) (quoting *Samuels v. Mackell*, 401 U.S. 66, 75 (Douglas, J., concurring)).

Defendants City of Detroit, Mayor Michael Duggan, Chief James Craig, Officer Stephen Anouti, Sergeant Timothy Barr, Officer David Hornshaw, Officer Mariah Erard, and Officer Does 1-100, have brought a counterclaim of civil conspiracy related to Plaintiffs' unlawful action, including violence against Detroit Police Department (DPD) officers. Stated differently, Defendants have brought an action that seeks recourse for the *agreement* between Plaintiffs to commit unlawful action. This is not a case that seeks to persecute Plaintiffs for their speech, standing alone. Rather, at most, certain speech by Plaintiffs is merely part of the call-and-response evidencing an agreement among Plaintiffs to commit unlawful action.

Defendants' claim, brought against Plaintiffs Detroit Will Breathe ("DWB"), Tristan Taylor, Nakia Wallace, Jazten Bass, Lauren Rosen, Lauryn Brennan, Amy Nahabedian, Zachary Kolodziej, Lillian Ellis, Olivia Puente, Iman Saleh, Margaret Henige, Caylee Arnold, and Alexander Anest, meets the pleading standards of this Court. Defendants need only to provide "a short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, a court must

1

accept as true all factual allegations, but need not accept any legal conclusions. *Northstar Energy LLC v. Encana Corp.*, 2014 WL 5343423, at *3 (W.D. Mich. Mar. 10, 2014) (quoting *Ctr. for BioEthical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011)). Defendants have met—even exceeded—this standard by pleading facts identifying the parties by name, identifying specific solicitations for unlawful activity and the responses thereto, specifying dates and locations of such solicitations and actual unlawful activity, and identifying the injuries sustained by Defendants.

The novelty of this case and Plaintiffs' premature concerns about hypothetical ramifications of the ultimate outcome of this litigation have no place in the consideration of a motion to dismiss. Defendants have met the pleading standard, and this Court should therefore deny Plaintiffs' Motion to Dismiss and allow this litigation to proceed.

## FACTUAL BACKGROUND

A summary of relevant facts, including Plaintiffs' concerted acts of lawlessness, is contained herein.[1] As an organization, DWB is distinguished by its militant culture and promotion of lawlessness. *See, e.g., ECF 43, PageID.609-610,¶17, 23, 24, 26*. DWB's website proclaims on its home page, "By using militant resistance and mass collective actions, our collective achieves meaningful local

---

[1] For additional factual background, Defendants direct this Court to their counterclaim in entirety. *See ECF 43, PageId.606-626*.

change…" *See* https://detroitwillbreathe.info/ (last accessed Dec. 2, 2020). Prior to July 10 and August 22, events attended by and planned by DWB resulted in unlawful behavior, some of which the individual Plaintiffs took part in. *See, e.g., ECF 43, PageId.610-614, ¶27-58.*

DWB uses its social media accounts to disseminate information about its events and to solicit participation at its events. *See, e.g., ECF 43, PageId.609-610,¶17, 23, 24, 26.*

On July 10, 2020, DWB sent out a call to action, urging Plaintiffs to protest the shooting death of Hakim Littleton. *ECF 43, PageId.614-615, ¶61.* By this time, multiple events hosted by DWB had resulted in unlawful action. *See, e.g., ECF 43, PageId.610-614, ¶27-58.* Plaintiffs T. Taylor, N. Wallace, L. Brennan, Z. Kolodziej, O. Puente, and M. Henige all responded to this solicitation and joined DWB at the intersection of McNichols and San Juan. *ECF 43, PageId.615, ¶62-63.* At this protest, Plaintiffs, including those identified, engaged in concerted lawless action, including resisting arrest and failing to obey lawful police directives. *ECF 43, PageId.615-617, ¶64-86.* DWB's solicitation also rallied together protestors who threw objects, including rocks, bleach, and other projectiles, at DPD officers. *ECF 43, PageId.615, ¶66.*[2] As a result of this unlawful conduct, T. Taylor, Z. Kolodziej,

---

[2] The fact that Defendants can only identify one party (DWB) that engaged in a conspiracy that sought and resulted in the unlawful hurling of dangerous objects at

and N. Wallace were arrested for disorderly conduct and disturbing the peace. *ECF 43, PageId.617, ¶84-86.*

On August 22, 2020, DWB again solicited participation in unlawful activity. *ECF 43, PageId.620-621, ¶101-103.* In its message, DWB clearly stated that it was unlawfully occupying the intersection of John R. and Woodward Ave., thereby obstructing traffic. *Id.* DWB also stated its intent to disobey any lawful order to disperse. *Id.* DWB actively called for other individuals to join them in this unlawful activity. *Id.*

Plaintiff T. Taylor also solicited similar unlawful activity. While present at the occupation, T. Taylor called for additional participation in the obstruction of the road and reiterated DWB's intent to disobey lawful police directives. *ECF 43, PageId.621, ¶104.* Plaintiff J. Bass made similar solicitations for unlawful activity, asking protestors, "[W]e got the right to post the f*** up wherever we want to right…nobody comes in and nobody goes out…unless we say so." *ECF 43, PageId.621-22, ¶107.* Plaintiffs, including, T. Taylor, J. Bass, N. Wallace, I. Saleh, L. Rosen, L. Ellis, O. Puente, M. Henige, A. Nahabedian, C. Arnold joined with DWB to engage in the very unlawful activity DWB proposed to them. Likewise,

---

officers at this time is not dispositive. As Plaintiffs are well-aware, as evidenced by their own claims brought against "Doe" officers, whether the exact identity of a party is known prior to discovery is not dispositive. *See* Section III, *infra.*

4

Plaintiffs, including N. Wallace, I. Saleh, L. Rosen, L. Ellis, O. Puente, M. Henige, A. Nahabedian, C. Arnold, and A. Anest joined with T. Taylor and J. Bass to engage in the unlawful activity T. Taylor and J. Bass proposed to them. *See, e.g., 105, 109-120*. Those identified acted together to obstruct traffic, disobey lawful orders to disperse, and engaged in other disorderly conduct. *ECF 43, PageId.622, ¶109-120*. Plaintiffs T. Taylor, N. Wallace, L. Ellis, M. Henige, and C. Arnold were arrested for disorderly conduct, disturbing the peace, and obstructing police, and obstructing justice. *ECF 43, PageId.622-623, ¶115-120*.

Defendants have sustained injuries and damages as a result of Plaintiffs' unlawful actions. *ECF 43, PageId.617, ¶83; 625-626, ¶135*.

## LEGAL ARGUMENT

### I.    DEFENDANTS HAVE ADEQUATELY PLEAD A CLAIM OF CIVIL CONSPIRACY.

#### A.    Pleading Standard

Plaintiffs' argument that Defendants' Counterclaim fails to meet the minimum pleading standards or Fed. R. Pro. Civ. 8 is without merit. Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief, and this does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), a complaint is viewed in the light most favorable to the party asserting the claim, the allegations in the complaint are

accepted as true, and all reasonable inferences are drawn in favor of that party. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228 (6th Cir. 1997) (quoting *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995). Plaintiffs' concerns about hypothetical implications to the right to protest do not negate the fact that Defendants have successfully pled sufficient facts to give rise to a colorable claim of civil conspiracy under Michigan law.

**B.    Defendants have adequately pled a claim of civil conspiracy.**

Defendants plead that Plaintiffs conspired to break the law by committing unlawful acts at protests organized and supported by DWB. These acts include: disobeying lawful police directives, obstruction of traffic, assault and battery against officers, and other such disorderly conduct. *See ECF 43, PageId.615-617, ¶¶64-86; 622, ¶109-120*. In bringing these claims, Defendants have easily met the pleading standard, alleging facts sufficient to meet all of the elements of civil conspiracy.

A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal means. *Admiral Ins. Co. v. Columbia Casualty Ins. Co.,* 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992); *see also Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir. 1985). "Express agreement among all the

conspirators is not necessary to find the existence of a civil conspiracy," and "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Hooks*, 711 F.2d at 944. "All that must be shown is that there was a single plan, that the alleged [conspirators] shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Ibid.*

> **1. An agreement existed among Plaintiffs to attend the protests and engage in unlawful behavior.**

Defendants allege that there was an agreement between two or more people. Detroit Will Breathe organized the protests, put out calls for illegal activity, and publicly projected a tolerance for violence. These protests were attended by Plaintiffs. For example, on July 10, 2020, Plaintiffs T. Taylor, N. Wallace, L. Brennan, Z. Kolodziej, O. Puente, and M. Henige responded to DWB's solicitation and attended the violent protest in response to the death of Hakim Littleton. Similarly, on August 22, 2020, DWB solicited Plaintiffs to occupy Woodward, thereby obstructing traffic and committing to engage in disorderly conduct and disobey lawful orders. This invitation was also extended by T. Taylor and J. Bass. Plaintiffs I. Saleh, L. Rosen, L. Ellis, O. Puente, M. Henige, A. Nahabedian, C. Arnold, and A. Anest agreed to engage in such conduct by attending the occupation.

Defendants have also adequately pled that there was an agreement between Detroit Will Breathe and Plaintiffs, as protest attendees. Defendants do not need to allege that there was an express agreement, and Defendants have certainly pled, at a minimum, the clear existence of an implied agreement between Plaintiffs who were protest organizers, and Plaintiffs who were protest attendees. This agreement is evidenced by the concerted actions of the identified parties, including solicitation participation in events that called for unlawful activity, actual attendance said events, and actually engaging in acts of wrongdoing.

For example, on July 10, DWB made a call through social media posts to commit unlawful actions, and Plaintiffs T. Taylor, N. Wallace, L. Brennan, Z. Kolodziej, O. Puente, and M. Henige responded and committed unlawful action. On August 22, DWB, T. Taylor, and J. Bass, made similar calls to commit unlawful actions—such as the social media posts and videos. Plaintiffs agreed to participate in these actions, including N. Wallace, I. Saleh, L. Rosen, L. Ellis, O. Puente, M. Henige, A. Nahabedian, C. Arnold, and A. Anest.

Plaintiffs' agreement is plainly evidenced by their attendance at the protests at specific dates, times, and locations promoted by DWB. Indeed, as alleged by Defendants, Plaintiffs were not simply physically present at protests, but actively participated in unlawful activity, including in the very behavior that the protest planners not only suggested, but explicitly called for. This especially true with

8

respect to the events of August 22, at which time Plaintiffs agreed to illegally occupy Woodward and did, in fact, take over the intersection of John R and Woodward by disobeying lawful police directives, obstructing traffic, and engaging in other disorderly conduct as planned.

### 2.   Plaintiffs engaged in unlawful activity as planned.

Moreover, Defendants have pled the unlawful action necessary to underpin Defendants' claim of civil conspiracy against Plaintiffs. *ECF 43, PageId.615-617, ¶64-86; 622, ¶109-120.* Plaintiffs engaged in a variety of wrongdoing, which was pled in the Complaint. Plaintiffs obstructed traffic. They failed to obey lawful police orders. They disobeyed lawful orders to disperse. Plaintiffs did exactly that which they agreed to do and were arrested for their wrongdoing. This wrongdoing is further evidenced by Plaintiffs' arrests for disorderly conduct, disturbing the peace, inciting to riot, and blocking public streets.

## II.   The First Amendment is not a Shield for Conspiring to Engage in Unlawful Activity.

Plaintiffs argue that Defendants' claims are barred because Plaintiffs have engaged in protected speech under the First Amendment. Defendants are not arguing that the underlying tort was defamation or any other tort that invokes speech that could be protected under the First Amendment. Rather, Defendants' argue that the underlying wrongdoing includes disobeying lawful orders, obstructing traffic,

assault and battery of officers and other disorderly conduct identified in their counterclaim.

A claim of civil conspiracy gets at the agreement to engage in concerted unlawful activity. The fact that Plaintiffs' agreement to engage in concerted unlawful activity is evidenced by certain speech does not permit Plaintiffs to use the First Amendment as a shield to hide their unlawful agreement. Stated otherwise, that Plaintiffs had to communicate between each other to agree to commit and effectuate this wrongdoing is, on its own, insufficient to invoke the protections of the First Amendment.

Similarly, Plaintiffs' reliance on *N.A.A.C.P. v. Claiborne Hardware* is misplaced. *See generally*, 458 U.S. 886 (1982). As argued in Section I(B) *supra*, Defendants are not arguing that certain Plaintiffs engaged in threats of violence, nor are they trying to bring a claim for incitement of violence or a riot. In *Claiborne Hardware*, business owners attempted to hold accountable boycotters and civil rights organizations for acts of violence and questionable speech that were ancillary to an otherwise lawful boycott. *Id.* The Supreme Court held that boycott activity which was not itself violent was constitutionally protected, and participants in the boycott who did not participate in or ratify violent activity could not be held liable. *Id.* The Supreme Court also held that in the absence of showing that violent activity followed the speeches, the boycott organizer who made impassioned speeches which

contained references to violence against those who did not participate could not be held liable. *Id.*

Here, Defendants are not seeking to hold liable innocent actors who engaged in lawful activity despite calls for violence from leadership. Rather, Defendants are seeking to hold accountable protestors who committed a series of unlawful acts in tandem with Plaintiff DWB.

## III.   RELIANCE ON THE FIRST AMENDMENT IS MISPLACED.

### A.   Whether Defendants have successfully pled defamation is irrelevant to their counterclaim.

Plaintiffs' continued declarations that Defendants are attempting to silence the demonstrators are wrong, disingenuous, and irrelevant to Plaintiffs' counterclaim. Likewise, the concerns raised by the American Civil Liberties Union, the American Civil Liberties Union of Michigan, and Protect the Protest Task Force in their amicus curiae briefs relating to defamation and the First Amendment are irrelevant to Defendants' counterclaim.  Defendants' counterclaim consists of one claim: civil conspiracy.

Although Defendants' counterclaim identified false, inflammatory statements made by Plaintiffs to help color their claim for civil conspiracy, Defendants acknowledge these statements likely do not rise to the level of defamation. Accordingly, Defendants did not allege defamation as a Count in their counter-

complaint. Defendants merely included these inflammatory statements in their counterclaim to create context, just as Plaintiffs included statements unrelated to the alleged constitutional violations committed by Defendants in their Complaint.

Defendants recognize Plaintiffs' freedom to exercise their First Amendment rights regarding the polarizing and important political and social issues identified in this case. Plaintiffs, however, fail to recognize that even the First Amendment has limitations. Defendants cannot tolerate Plaintiffs' concerted efforts to engage individuals in committing criminal acts, including but not limited to, intentionally disobeying lawful police directives, obstructing traffic, assault and battery on officers, and other disorderly conduct. Plaintiffs' concerted efforts to encourage these criminal activities are what is at issue in Defendant's counterclaim. Plaintiffs' speech in isolation, including whether this speech was likely to incite violence, is not at issue. As discussed in Sections I and II, *supra*, Plaintiffs' speech evidences an agreement among the other Plaintiffs to engage in criminal behavior, which resulted in multiple underlying torts of criminal activity. Defendants have properly pled civil conspiracy.

### B.  Amici's focus on First Amendment speech rights is inapposite.

*Amicus* American Civil Liberties Union and *Amicus* Protect the Protest focus the majority of their amici curiae briefs discussing Plaintiffs' First Amendment Rights and what constitutes constitutionally protected speech. Defendants do not

dispute that the First Amendment protects criticism of the government; that speech encouraging, but not inciting, violence is constitutionally protected; or that a protest movement on its face is not a conspiracy.

Yet, Defendants' counterclaim is not based on Plaintiffs' speech in isolation. Plaintiffs' statements are raised and noted only to show evidence of an implicit agreement to commit criminal activity. These statements are not raised to indicate that the statements incited violence on their face or to establish liability on the part of Plaintiffs for actions taken by others. As discussed throughout this Response, Defendants have successfully plead that Plaintiffs conspired with one another to commit criminal acts, including but not limited to, engaging in disorderly conduct, disturbing the peace, obstructing justice, and blockading public streets. Contrary to the egregious statements made by Plaintiffs and *amici*, Defendants' counterclaim is not an attack on Plaintiffs' First Amendment rights or an attempt to silence Plaintiffs.[3]

---

[3] *Amicus Protect the Protest* argues that Defendants' counterclaim is a "quintessential SLAPP suit" designed to hinder free speech and force the opposing party into expensive litigation. Despite the fact that the Michigan legislature has not enacted statutory anti-SLAPP law making this argument moot, Defendants' counterclaim was not brought to stop Plaintiffs from exercising their political right to free speech or to punish them for engaging in such speech. Defendants' counterclaim was brought based on Plaintiffs' nefarious, concerted efforts to engage in criminal activity at the expense of public safety.

## IV.   DEFENDANTS DO NOT RELY ON UNIDENTIFIED THIRD PARTIES TO FORM THE BASIS FOR PLAINTIFFS' LIABILITY.

Plaintiffs mischaracterize the basis for Defendants' civil conspiracy claim by insinuating that Defendants are relying on third parties to support their claim. Similar to the references to inflammatory statements made by Plaintiffs, Defendants referred to the actions of third parties throughout their pleading to create context and establish the severity of Plaintiffs' actions. Plaintiffs acted similarly in drafting their Complaint by referring to police conduct taken against non-party individuals.[4] While these statements were irrelevant to Plaintiffs' claims, Plaintiffs still pled them to highlight what they believed to be unlawful actions taken by Defendants.

Defendants' references to unidentified third parties do not eliminate or diminish the fact that Defendants have successfully pled that Plaintiffs engaged in concerted efforts to commit unlawful activity. As identified by Plaintiffs, to sufficiently state a claim of civil conspiracy and to survive a 12(b)(6) motion to dismiss, Defendants' counterclaim need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Instead, the court must

---

[4] Examples include Paragraph 111 ("One bystander, who lives on Woodward Avenue, simply opened his front door to provide respite to demonstrators as they dispersed. Multiple Doe Officers seized him, held him down, punched him in the face over ten times (leaving him with two black eyes) and arrested him") and Paragraph 135 ("On July 30, 2020, felony assault charges were issued against DPD officer Daniel Debono after he openly fired rubber bullets at three journalists without provocation. All three suffered injuries.") *ECF No. 1, PageID 27, 34.*

"consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. 662 (2009).

Defendants' counterclaim does precisely that. As described by Plaintiffs in Footnote 14 of their Motion to Dismiss, Defendants alleged that on May 29 and May 31, some Plaintiffs (including, but not limited to, L. Ellis and A. Nahabedian) attended a protest where protestors engaged in disorderly behavior, throwing heavy, dangerous objects at police officers. *ECF No. 46, PageId.669*. Likewise, Defendants have alleged that on July 10, Plaintiff DWB issued a statement on social media urging people to gather at McNichols Road to respond to the police shooting of Hakim Littleton. Defendants identified specific Plaintiffs who attended. As argued in Section I(B), *supra*, the call to protest resulted in some protestors, which may have included Plaintiffs, hurling dangerous objects at police officers.

Likewise, as described above, Defendants allege in Paragraphs 101-120 of their counterclaim that Plaintiffs published multiple social media posts encouraging DWB members to occupy the intersection of Woodward and John R on August 22, which culminated in the arrests of multiple Plaintiffs for Obstructing Justice, Disorderly Conduct, and Disturbing the Peace, after they blocked off streets, obstructed traffic, and failed to follow lawful directives to disperse. All of these allegations establish underlying facts to allow a plausible inference of liability in the context of a civil conspiracy claim.

15

Plaintiffs seek a greater level of specificity than required by the well-established precedent they cite. In order to determine the scope of Plaintiffs' involvement and the specific identity of each individual Plaintiff involved in each specific concerted effort to engage in specific criminal actions, both parties must be offered the opportunity to engage in discovery. At this stage of the litigation, dismissing Defendants' counterclaim is premature.

Plaintiffs employed a similar strategy in filing their Complaint, which included countless references to "Doe" officers. Similar to Plaintiffs' Complaint, Defendants' counterclaim should not be dismissed simply because Defendant is unable to identify the specific Plaintiffs involved in wrongdoing, when it has been pled that some Plaintiffs engaged in concerted actions to commit criminal activity. Just as Plaintiffs asserted in Paragraph 37 of their Complaint they will "amend [their] Complaint to allege [the officers'] true names and capacities when ascertained," Defendants will amend their pleading after ascertaining the identifies of the specific Plaintiffs involved in each paragraph of their counterclaim after engaging in the discovery process. *ECF No. 1, PageID.11.*

## V.   THE INTRA-CORPORATE DOCTRINE DOES NOT BAR DEFENDANTS' CLAIMS.

The intra-corporate conspiracy doctrine, which stands for the premise that members of the same collective entity cannot form a conspiracy, does not apply to

Defendants' counterclaim. This well-established doctrine arose in the antitrust field and courts have expanded its scope to apply to cases alleging civil rights conspiracies under the federal Civil Rights Act (42 U.S.C. 1985(3)). *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). In both cases that Plaintiffs identified, the intra-corporate conspiracy doctrine applied to claims of civil conspiracy alleged under the federal Civil Rights Act. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *Hull*, 926 F.2d 505, 510 (6th Cir. 1991).

In this case, however, Plaintiffs have identified no cases where the intra-corporate conspiracy doctrine has been applied to claims of civil conspiracy alleged under Michigan common law. As such, Defendants' counterclaim of civil conspiracy alleged under Michigan common law is not barred under this doctrine.

Moreover, Plaintiffs admit that Detroit Will Breathe "has no formal membership structure or program." *ECF No. 46, PageID.652*. Without a formal membership structure or program, DWB cannot be said to have conspired with its "own agents" as contemplated by the intra-corporate conspiracy doctrine.

Even if the intra-corporate doctrine applied to claims of civil conspiracy alleged under Michigan law, the doctrine is insufficient to bar Defendants' counterclaim at this stage of the litigation. At this time, the corporate structure of DWB is unclear and unidentified. While Defendants are aware that Plaintiff N.

Wallace is the incorporator of DWB, the affiliation of the other Plaintiffs identified in the Complaint, particularly those who attended the protests on July 10 and August 22, is unclear.

Without allowing the parties to engage in discovery, this court cannot know whether the individual Plaintiffs identified in Defendants' counterclaim are considered members of DWB as an organization such that the intra-corporate conspiracy doctrine insulates them from liability for a civil conspiracy claim. Plaintiffs' reliance on the intra-corporate conspiracy doctrine to bar suit requires the Court to make factual findings regarding each Plaintiffs' affiliation with DWB. Such findings are inappropriate in ruling on a motion to dismiss. *Bacon v. Subway Sandwiches & Salads LLC*, 2015 WL 729632, at *5 (E.D. Tenn. Feb. 19, 2015) (denying defendants' motion to dismiss with respect to the civil conspiracy claims because defendants' theory of intra-corporate immunity relied on the Court making factual findings).

Moreover, courts have created a "scope of employment" exception that recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place. *Johnson*, 40 F.3d at 840. While at this stage of the litigation it is believed that DWB does not employee any of the Plaintiffs, the principles of the exception may still apply. Plaintiffs' actions were not done in pursuit of DWB's supposed mission to

"promote social welfare" with the use of "militant resistance and mass collective action" to achieve "meaningful local reforms." *ECF 36-2, PageID 538-543.* Instead, a select group of Plaintiffs, who may be affiliated with DWB, chose to conspire to engage in criminal activity, which included blockading Woodward Ave., such that they could "declare this street our street," meaning that "nobody comes in and nobody goes out…unless we say so." *ECF No. 43, PageID.621-22.*

## VI.   THE FIREMAN'S RULE DOES NOT PRECLUDE DEFENDANTS' CLAIM OF CIVIL CONSPIRACY.

This Court should reject Plaintiff's argument that the "fireman's rule" bars Defendants' counterclaim because Plaintiffs mislead this Court by failing to disclose the text of the entire statute.  M.C.L. § 600.2967, otherwise known as the "fireman's rule," is inapplicable to Defendants' counterclaim of civil conspiracy. Plaintiffs conveniently omitted Subsection 2 of M.C.L. § 600.2967 from their Motion to Dismiss, which states that M.C.L. § 600.2967 "shall not be construed to affect a right, remedy, procedure, or limitation of action that is otherwise provided by statute or common law." Michigan courts have held that the plain, unambiguous language of the statute indicates there is a "clear demarcation" between the causes of action covered by subsection 1 – which includes causes of action based on gross negligence, intentional conduct, crimes, product liability, and ordinary negligence –

19

and all other causes of action arising under statutory or common law. *Tull v. WTF, Inc.*, 706 N.W.2d 439, 443, 445-46 (2005).

Here, Defendants' counterclaim of civil conspiracy is clearly a cause of action that is otherwise provided by the common law. Thus, an action for civil conspiracy falls outside the parameters of subsection 1 of M.C.L. § 600.2967 and is preserved by subsection 2. While Plaintiffs' criminal activity constitutes the underlying torts that Plaintiffs conspired to commit, Defendants are not seeking redress for these actions as Defendants are suing in civil court. Defendants' one-count counterclaim solely seeks redress for Plaintiffs' civil conspiracy, which constitutes a separate cause of action under the common law that is not barred by the fireman's rule.

Moreover, even if Defendants were seeking redress from Plaintiffs' underlying torts of criminal activity, these claims would not be barred by the fireman's rule at this stage of the litigation. Defendants are entitled to discovery to determine whether a genuine issue of material fact exists under subsection 1 of M.C.L. § 600.2967 as to whether Plaintiffs' behavior was grossly negligent; intentional; or likely to result in a conviction, guilty plea, or plea of no contest if the crimes were prosecuted. *Saldana v. Smith*, 2000 WL 33417387, at *1-2 (Mich. Ct. App. July 11, 2000) (holding because no discovery had occurred in the case, summary disposition based on the applicability of the fireman's rule was premature). Furthermore, many of underlying torts at issue in Defendants' counterclaim are

unrelated to physical injuries sustained by Defendant officers, and instead relate back to Plaintiff's refusal to obey lawful police directives, obstruction of traffic, and other disorderly conduct and are further evidenced by Plaintiffs' arrests for disorderly conduct, disturbing the peace, inciting to riot, and blocking public streets.

## VII.   THE NOERR-PENNINGTON DOCTRINE DOES NOT IMMUNIZE PLAINTIFFS' ACTIONS.

While the Sixth Circuit has applied the Noerr-Pennington doctrine cited by *amicus* Protect the Protest broadly, it does not apply to Defendants' civil conspiracy counterclaim. The Noerr-Pennington doctrine was initially recognized solely in the antitrust field to protect the right to petition. It has since been applied by analogy to similar claims implicating this right, including common law claims of tortious interference with business relationships. *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007). Despite this expanded reach, the Noerr-Pennington doctrine does not apply to just any claim relating to First Amendment activity. The essence of the doctrine is to protect those who petition the government for governmental action favorable to them with respect to business relationships even though their petitions "are motivated by anticompetitive intent." *Id.* The cases cited by Plaintiffs regarding the doctrine are based on antitrust violations or interference with business relationships.

Here, assuming the goal of the DWB organization is to promote the social welfare and to achieve local reforms within the Detroit Police Department, as they have claimed, these goals are not based on a business relationship or grounded in anticompetitive intent. The Noerr-Pennington doctrine simply does not apply or relate to Defendants' counterclaim of civil conspiracy.

The inapplicability of the Noerr-Pennington doctrine is further evidenced by the "sham" exception to the doctrine outlined by the courts. Under the "sham" exception, activity directed towards influencing governmental action does not qualify for Noerr-Pennington immunity if it is a "mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). The exception's focus on the impact on business relationships further indicates that this doctrine was not meant to apply outside of a business context.

Even if the Noerr-Pennington doctrine were relevant to Defendants' counterclaim, it does not immunize Plaintiffs' actions. Defendants are not counter-suing Plaintiffs for their efforts to achieve meaningful local reform grounded in their right to petition. Defendants are counter-suing Plaintiffs for their concerted efforts to engage in unlawful activity contrary to DWB's stated purpose. The doctrine does not protect private actors from liability for consequences of their own violent conduct. *See Claiborne Hardware Co.*, 458 U.S. 886.

Here, the injuries and harms at issue did not arise as a consequence of Plaintiffs' First Amendment petitioning activity, but rather arose because Plaintiffs conspired to commit violent, unlawful conduct. Plaintiffs encouraged each other to engage in unlawful activity and then committed the very unlawful activity they vowed to do.[5]

Reliance on the Noerr-Pennington doctrine is another attempt by Plaintiffs and *amici* to shift the focus from Plaintiffs' concerted efforts to engage in criminal activity to Plaintiffs' speech in isolation. Finally, at bottom, further discovery is necessary to determine whether the Noerr-Pennington doctrine applies to immunize Plaintiffs' conduct based on the nature of Plaintiffs' concerted efforts to commit criminal activity.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court DENY Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim.

---

[5] Moreover, if this court finds the Noerr-Pennington doctrine's applicability to be relevant, the "sham" exception could apply here such that the doctrine would not immunize Plaintiffs' actions as these actions were not genuinely aimed at procuring favorable government action and were instead a mere sham to cover  an attempt to interfere with the DPD's ability to protect the public according to the laws of the state. *VIBO Corp. v. Conway*, 669 F.3d 675, 685–86 (6th Cir. 2012) ("A 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all . . .'")

Dated: December 4, 2020                    Respectfully submitted,

                                           *s/Reginald M. Turner*
                                           CLARK HILL PLC
                                           Reginald M. Turner (P40543)
                                           Maria Fracassa Dwyer (P60946)
                                           Christopher M. Trebilcock (P62101)
                                           500 Woodward Avenue, Suite 3500
                                           Detroit, MI  48226
                                           (313) 965-8300
                                           rturner@clarkhill.com
                                           mdwyer@clarkhill.com
                                           ctrebilcock@clarkhill.com
                                           *On behalf of Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I electronically filed the foregoing papers using the Court's ECF system, which will send notification of such filing to all counsel of record.

                              */s/ Paula Proffitt*
                              Paula Proffitt

24

ClarkHill\22387\413235\261345573.v2-12/4/20