UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DETROIT WILL BREATHE,**
**TRISTAN TAYLOR, NAKIA WALLACE,**          Case No. 2:20-cv-12363
**JAZTEN BASS, LAUREN ROSEN, LAURYN**          Hon: Laurie J. Michelson
**BRENNAN, AMY NAHABEDIAN, ZACHARY**
**KOLODZIEJ, LAUREN BRANCH,**
**LILLIAN ELLIS, OLIVIA PUENTE,**
**IMAN SALEH, MARGARET HENIGE,**
**CAYLEE ARNOLD,** and **ALEXANDER ANEST,**

              Plaintiffs,
vs.

**CITY OF DETROIT,** a municipal corporation,
**MAYOR MICHAEL DUGGAN,** acting in his official
and individual capacities, **CHIEF JAMES CRAIG,** acting in his official
and individual capacities, **OFFICER STEPHEN ANOUTI, SERGEANT**
**TIMOTHY BARR**, **OFFICER DAVID HORNSHAW, OFFICER MARIAH**
**ERARD,** and **OFFICER DOES 1-100 inclusive,**
acting in their respective individual capacities, all jointly and severally,

              Defendants.
_____/

### DEFENDANTS/COUNTER-PLAINTIFFS' MOTION FOR RECONSIDERATION OF OPINION AND ORDER GRANTING PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS <u>COUNTERCLAIM</u>

For the reasons more fully set forth in the accompanying brief,

Defendants/Counter-Plaintiffs City of Detroit, Mayor Michael Duggan, Chief James

Craig, Officer Stephen Anouti, Officer David Hornshaw, Officer Mariah Erard and

Officer Does 1- 100 inclusive (Defendants), by and through their attorneys Clark

Hill PLC, respectfully moves this Court pursuant to E.D. Mich. L.R. 7.1(h) for reconsideration of its March 10, 2021 Opinion and Order granting Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim.

Pursuant to Local Rule 7.1, defense counsel has requested concurrence in the relief sought in this motion, but concurrence was not obtained, and thus it is necessary to bring this Motion.

WHEREFORE, Defendants respectfully request that the Court grant their Motion for Reconsideration and enter an Order vacating its March 10, 2021 Opinion and Order granting Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim and permitting Defendants/Counter-Plaintiffs leave to amend their counterclaim.

Dated: March 24, 2021

Respectfully submitted,

*/s/Maria Fracassa Dwyer*
CLARK HILL PLC
Reginald M. Turner (P40543)
Maria Fracassa Dwyer (P60946)
Christopher M. Trebilcock (P62101)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
rturner@clarkhill.com
mdwyer@clarkhill.com
ctrebilcock@clarkhill.com
*On behalf of City of Detroit and Mayor Michael Duggan, Chief James Craig, Officer Stephen Anouti, Officer David Hornshaw, Officer Mariah Erard and Officer Does 1-100, inclusive*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DETROIT WILL BREATHE,**
**TRISTAN TAYLOR, NAKIA WALLACE,**          Case No. 2:20-cv-12363
**JAZTEN BASS, LAUREN ROSEN, LAURYN**       Hon: Laurie J. Michelson
**BRENNAN, AMY NAHABEDIAN, ZACHARY**
**KOLODZIEJ, LAUREN BRANCH,**
**LILLIAN ELLIS, OLIVIA PUENTE,**
**IMAN SALEH, MARGARET HENIGE,**
**CAYLEE ARNOLD,** and **ALEXANDER ANEST,**

              Plaintiffs,

vs.

**CITY OF DETROIT,** a municipal corporation,
**MAYOR MICHAEL DUGGAN,** acting in his official
and individual capacities, **CHIEF JAMES CRAIG,** acting in his official
and individual capacities, **OFFICER STEPHEN ANOUTI, SERGEANT**
**TIMOTHY BARR**, **OFFICER DAVID HORNSHAW, OFFICER MARIAH**
**ERARD,** and **OFFICER DOES 1-100 inclusive,**
acting in their respective individual capacities, all jointly and severally,

              Defendants.

_____/

## BRIEF IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' MOTION FOR RECONSIDERATION

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.......................................................................... ii

ISSUES PRESENTED ................................................................................. iii

BACKGROUND AND INTRODUCTION ............................................................1

STANDARD OF REVIEW .........................................................................8

LEGAL ARGUMENT ................................................................................8

CONCLUSION .......................................................................................16

ClarkHill\22387\413235\262478867.v1-3/24/21

# INDEX OF AUTHORITIES

## Cases

*Admiral Ins. Co. v. Columbia Casualty Ins. Co.,* 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992) .................................................................................9

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) .............................................................9, 14

*DirecTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 920-21 (E.D. Mich. 2003) ..........8

*Early Detection Center, P.C. v. N.Y. Life Ins. Co.,* 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) ......................................................................................10

*Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir. 1985) ............................................9

*Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 643 (E.D. Mich. 2005) .................14

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1053 (6th Cir. 2011) ................................................................................................16

*Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001) ...................................................................................................8

*Prudential Def. Sols., Inc. v. Graham,* No. 20-11785, 2020 WL 6382862, at *9 (E.D. Mich. Oct. 30, 2020) .....................................................................9

*Prudential Def. Sols., Inc.,* 2020 WL 6382862, at *9 ..............................................14

*Sigma Fin. Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 200 F. Supp. 2d 710, 715 (E.D. Mich. 2002) ...................................................................................8

*Trinkle v. Hammer Trucking, Inc.*, No. 16-14361, 2018 WL 783153, at *2 (E.D. Mich. Feb. 7, 2018) ...............................................................................16

## Rules

E.D. Mich. L.R. 7.1(h)(3) ...........................................................................................8

Fed. R. Civ. 15(a)(2) ...............................................................................................15

ClarkHill\22387\413235\262478867.v1-3/24/21

## <u>ISSUES PRESENTED</u>

Whether the Court's Opinion and Order granting Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim on the basis that Defendants/Counter-Plaintiffs failed to plead an underlying tort in support of their claim of civil conspiracy should be reconsidered, where Defendants/Counter-Plaintiffs sufficiently plead the underlying torts of assault and battery.

Plaintiffs/Counter-Defendants answer:        No.

Defendants/Counter-Plaintiffs answer:        Yes.

This Court should answer:        Yes.

ClarkHill\22387\413235\262478867.v1-3/24/21

## BACKGROUND AND INTRODUCTION

The "protests" that wreaked havoc on the City of Detroit from May to September of 2020 were violent, dangerous riots that resulted in physical harm to officers and jeopardized public safety. These protests were planned and promoted by Plaintiff/Counter-Defendant Detroit Will Breathe ("DWB"), which solicited participation in their events and whose members carried out tortious acts of violence, including multiple instances of assault and battery on Detroit Police Department ("DPD") officers.[1]

The first night of riots was on May 29, 2020. Protestors gathered downtown, where they threw rocks, bricks, and glass bottles at officers. *Ex. 2.* Several of these projectiles were thrown down on officers from apartment windows and parking garages. *Ex. 2.* This violence continued into the next night. On May 30, at a protest organized by Counter-Defendant Tristan Taylor, protestors continued to throw dangerous objects at DPD officers, including railroad spikes, fireworks, glass bottles, and other missiles. *Exs. 3, 4, 5.* On May 31, DPD officers once again tried to control violent mobs while having their own tear gas cannisters thrown back at them. *ECF 24-11.*

---

[1] See generally videos produced previously, which have been re-produced as Exhibit 1 via flash drive.

ClarkHill\22387\413235\262478867.v1-3/24/21

On May 29-30, protestors threw dangerous objects at occupied police vehicles, oftentimes causing serious damage to vehicles. *Ex. 6*.

On June 28, DWB scheduled another protest. *Ex. 7*. At the protest, Plaintiff Jazten Bass jumped on an occupied police vehicle and pounded on it as officers tried to navigate the vehicle safely through an angry crowd of protestors, who surrounded it. *Ex. 8*. Other DWB protestors smashed the rear window of the vehicle. Despite the fact that it was DWB, along with Counter-Defendant J. Bass, who were threating DPD officers, DWB shared a "Wanted" style poster of the officers who were trying to make their way through the crowd. *ECF 24-8*.

Over the course of the summer, the violence against DPD officers only increased. On July 10, 2020, DWB organized a demonstration in response to the death of Hakim Littleton. DWB posted the event on its social media pages. DWB posted, "RAPID RESPONSE CALL TO ACTION: Detroit Police Department killed a 19 year old today. Our planned march is cancelled so that the movement can respond to the injustice! Get to 7446 McNichols Rd. as soon as you can." *Ex. 9*. DWB also streamed a video at the intersection of San Juan and McNichols, encouraging people to rally against the DPD yet again. In this video, DWB spewed lies about the circumstances surrounding Littleton's death, ranting:

> "the motherf***ing police just shot this nineteen year old kid twenty f***ing times because he walked out of his house and down the street. That's it. Get your asses out here now because this bulls*** is done…McNichols and

2

San Juan—get out here right now. The police just shot this kid twenty f***ing times for no reason. Come out now. F*** this s***…F*** these police. F*** these police. San Juan and McNicholas [sic]. Get your ass out here. F*** these police. A nineteen year old f***ing boy walked out of his house and down the street and the cops shot him 'bout twenty f***ing times for no f***ing reason. They took his body away in under ten minutes and now they're blocking off the f***ing streets. F*** this s***. Did you hear what I said? Do I need to say it again? Yeah, nineteen year old boy walked out of his house and down the street. Got shot twenty f***ing times with a shotgun by DPD for no f***ing reason bro. Took the body away in ten f***ing minutes acting like no—"

*Ex. 10.*

The video showed the exact location of the gathering protest—the intersection of San Juan and McNichols—and DWB members Tristan Taylor, J. Bass, and Nakia Wallace at the front of the crowd. *Ex. 10.* In response to solicitations such as those DWB shared on social media, Counter-Defendants Lauren Brennan, Zachary Kolodziej, Olivia Puente, and Margaret Henige joined T. Taylor, J. Bass, and N. Wallace. T. Taylor addressed the gathering crowd, shouting into a megaphone, "Today is the day we draw the f***ing line and we say enough is enough…We won't move until we get justice." *Ex. 10.*

As a crowd amassed in response to DWB's call to action, DPD officers gave DWB protestors, including the Counter-Defendants present, multiple warnings to disperse. In particular, DPD clearly announced through a loudspeaker, "This is the Detroit Police Department . . . We support your right to protest. Move backwards

onto 6 Mile so we can retrieve our equipment and then we will leave the scene." *Ex. 10*. DWB protestors refused, and instead began hurling dangerous objects— including rocks, traffic cones, umbrellas, glass, and garbage—at officers. *Ex. 10*.

Other DWB protestors pushed back on DPD officers and screamed in their faces. When officers closed in on the crowd, Plaintiffs O. Puente and L. Brennan shoved back on an officer's protective shield. *Exs. 1, 10.*

When officers went to arrest Plaintiff Z. Kolodziej, they were met with aggression and dangerous behavior. Kolodziej, who was refusing to obey a lawful order to get back, repeatedly lunged at officers and went to headbutt them, all while yelling "f*** you" in officers' faces. *Exs. 1, 10.*

Likewise, instead of listening to lawful orders to get back, DWB member N. Wallace screamed in officers' faces while the violence from the crowd swelled around her. N. Wallace then resisted arrest, using her body to push against the arresting officer's, causing them both to fall. *Exs. 1, 10.*

Despite the DWB protestors' violence, DPD officers nonetheless pleaded with protestors to move back and go home both before and during DWB's escalations of violence. After officers were forced to finally deploy tear gas against the crowd, cannisters of gas were thrown back at officers. *Exs. 1, 10.*

On August 22, DWB again called for lawlessness and violence against officers. Soliciting participation in an unlawful occupation of Woodward Avenue,

4

DWB tweeted "DWB is occupying the intersection of Woodward and John R to demand the immediate end of Operation Legend and the withdrawal of federal agents sent to Detroit by the Trump administration to terrorize Black and Brown communities. We aren't leaving until the feds leave." The same day DWB tweeted, "Come down here if you would like to support us and help us hold this space." *Ex. 11*.

DWB also posted on its Facebook page, "Come down here if you would like to support us and help us hold this space!" The post also included an image that stated "DETROIT WILL BREATHE IS OCCUPYING THE INTERSECTION OF WOODWARD AND JOHN R TO DEMAND THE IMMEDIATE END OF OPERATION LEGEND AND THE WITHDRAWAL OF FEDERAL AGENTS SENT TO DETROIT BY THE TRUMP ADMINISTRATION TO TERRORIZE BLACK AND BROWN COMMUNITIES. WE AREN'T LEAVING UNTIL THE FEDS LEAVE." *Ex. 11*

Counter-Defendant T. Taylor posted a video on Facebook of himself, telling people "So if you ain't doing nothing and you wanna…be a part of the movement that's taking up space, we're here. We ain't leaving until they make us leave." *Ex. 1*.

In response to these calls, Counter-Defendants (including, but not limited to) J. Bass, N. Wallace, I. Saleh, L. Rosen, O. Puente, M. Henige, A. Nahabedian, C. Arnold, and A. Anest attended the occupation.

At the August 22 protest, Counter-Defendant J. Bass addressed the protestors, including Counter-Defendants, shouting, "…[I]f it's our streets and it's our city, we got the right to post the f*** up wherever we want to, right? Which means...that we can block off an intersection in a busy street, like street #1, Woodward and we can declare this street our street. Which means that nobody comes in and nobody goes out...unless we say so." *Ex. 12*.

As they had at every protest, DPD officers issued numerous orders for the DWB protestors, including T. Taylor, J. Bass, N. Wallace, I. Saleh, L. Rosen, O. Puente, M. Henige, A. Nahabedian, C. Arnold, and A. Anest, to disperse. *Ex. 11*. They refused to do so. As a result, DPD deployed tear gas. Again, the DPD's tear gas was thrown back at officers. Even worse, DWB brought its own chemical munitions, which it used against officers. *Ex. 12*. After the protest had subsided, Plaintiff Amy Nahabedian continued to throw rocks at officers from her bike. *Ex. 12*.

As a result of DWB and the individual Counter-Defendants' summer of violence, numerous DPD officers sustained injuries. Several officers were struck by

the dangerous objects hurled by protestors and sustained lacerations and bruising. At least one officer sustained a fractured vertebra.

In response to the lawlessness of DWB and its members, including Counter-Defendants, Counter-Plaintiffs brought a counterclaim asserting a claim of civil conspiracy. In support of their claim, Counter-Plaintiffs set forth detailed factual allegations of not only criminal wrongdoing, but the torts of assault and battery as well. *See ECF 43, PageID.606-626*. Counter-Plaintiffs also referenced the torts of assault and battery in their Response in Opposition to Plaintiffs/Counter-Defendants' Motion to Dismiss. *ECF 54, PageID.808, 811-812, and 814*. On March 10, 2021, this Court entered its Opinion and Order granting Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim ("Opinion and Order"). *See generally ECF 61*. The Opinion and Order were based on the premise that Counter-Plaintiffs did not sufficiently plead an underlying tort as the basis for their claim of civil conspiracy against Counter-Defendants. This rationale, however, ignores entirely the fact that Counter-Plaintiffs plead the underlying torts of assault and battery against Counter-Plaintiffs. The Court's logic for granting Counter-Defendants' Motion to Dismiss is therefore in error, and the Court should grant this Motion for Reconsideration.

ClarkHill\22387\413235\262478867.v1-3/24/21

## STANDARD OF REVIEW

Eastern District of Michigan Local Rule 7.1(h)(3) provides that a party bringing a motion for reconsideration must show (1) a palpable defect; (2) that misled the court and the parties; and (3) correcting the defect will result in a different disposition of the case.  E.D. Mich. L.R. 7.1(h)(3); *Sigma Fin. Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 200 F. Supp. 2d 710, 715 (E.D. Mich. 2002).  A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain.  *Sigma Fin. Corp.* 200 F. Supp. 2d at 710, quoting *Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001).

Motions for reconsideration "are entrusted to the Court's sound discretion," and may generally be granted for three reasons: "(1) an intervening change in law; (2) evidence not previously available has become available; or (3) the necessity to correct a clear error of law or prevent manifest injustice." *DirecTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 920-21 (E.D. Mich. 2003).

## LEGAL ARGUMENT

## I.   THE COURT'S FAILURE TO CONSIDER COUNTER-PLAINTIFFS' ALLEGATIONS OF ASSAULT AND BATTERY WAS A PALPABLE DEFECT.

In its Opinion and Order, the Court focuses on Counter-Plaintiffs' allegations in the counterclaim that Counter-Defendants conspired to commit unlawful activity that included obstruction of traffic, failing to obey lawful police directives, and

disorderly conduct. In so doing, the Court did not consider Counter-Plaintiffs also sufficiently alleged that Counter-Defendants conspired to commit the underlying torts of assault and battery against DPD officers. The Court's failure to consider the underlying torts constitutes palpable error.

A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal means. *Admiral Ins. Co. v. Columbia Casualty Ins. Co.,* 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992); *see also Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy," and "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Hooks,* 711 F.2d at 944. "All that must be shown is that there was a single plan, that the alleged [conspirators] shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Ibid.* As the Court indicates in its Opinion and Order, [c]ivil conspiracy is not a claim of its own; 'it is necessary to prove a separate, actionable tort.'" *Prudential Def. Sols., Inc. v. Graham,* No. 20-11785, 2020 WL 6382862, at *9 (E.D. Mich. Oct. 30, 2020) (quoting *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) and

*Early Detection Center, P.C. v. N.Y. Life Ins. Co.,* 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)).

In their counterclaim, Counter-Plaintiffs clearly set forth facts sufficient to prove that DWB and other Counter-Defendants agreed, by some concerted action, to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal means. These facts include those sufficient to plead that Counter-Defendants committed underlying torts necessary for the establishment of a claim of civil conspiracy. In addition to the criminal activity alleged in their counterclaim, Defendants also sufficiently plead that the underlying torts included assault and battery against DPD officers. For example, in their counterclaim, Counter-Plaintiffs alleged the following:

14. Counter-Defendants have been captured on video hurling dangerous projectiles at police officers, blocking busy streets and school buses, encouraging violent behavior, screaming loudly in the faces of DPD officers, refusing to follow clear and lawful DPD directives and destroying and defacing public property.

\*\*\*

22. Counter-Defendant DWB has a Twitter account and an Instagram account that it uses to communicate with its members. DWB uses this Twitter account in a similar manner to its Facebook account.

23. Some of these videos show speakers encouraging violence or endorsing violence against police officers, promoting the destruction and defacing of property, and disrupting the lives of Detroit residents.

10

24. For example, DWB shared a video of a protestor telling other protestors that "non-violence is no longer their shield or the answer." He then called on fellow protestors to take police "badges and teeth."

\*\*\*

33. Counter-Defendants, including (but not limited to) L. Ellis and A. Nahabedian attended this protest.

\*\*\*

37. Protestors hurled dangerous objects, including rocks and missiles at DPD officers.

\*\*\*

59. Counter-Defendant DWB organized a protest on July 10, 2020 in response to the shooting of Hakim Littleton.

60. Counter-Defendant DWB immediately solicited protestors, including Counter-Defendants, to participate in the protest.

61. As part of their solicitation efforts, DWB tweeted, "RAPID RESPONSE CALL TO ACTION: Detroit Police Department killed a 19 year old today. Our planned march is cancelled so that the movement can respond to the injustice! Get to 7446 McNichols Rd. as soon as you can!"

62. Protestors, including Counter-Defendants, gathered at the intersection of McNichols and San Juan.

63. Upon information and belief, Counter-Defendants (including, but not limited to) T. Taylor, N. Wallace, L. Brennan, Z. Kolodziej, O. Puente, and M. Henige attended the July 10 protest.

\*\*\*

66. Protestors threw objects, including rocks, bleach, and other projectiles at DPD officers.

11

67. Counter-Defendant Z. Kolodziej was one of the Counter-Defendants who defied the police order to get back.

68. When he was told to get back by DPD officers, Counter-Defendant Kolodziej instead lunged forward towards officers and yelled, "F*** you!"

69. Officers tried to restrain Counter-Defendant Kolodziej while having objects, including glass bottles, hurled at them.

70. Counter-Defendant Kolodziej broke loose and *again* came towards officers, appearing to "head-butt" the restraining officer.

71. Counter-Defendant Kolodziej was then restrained on the ground.

72. An officer instructed Kolodziej to put his hands behind his back.

73. Counter-Defendant Kolodziej refused the order, yelling "F*** you! F*** you, motherf***er! F*** you!"

***

75. … Counter-Defendant Wallace continued to stand in the road and screamed at DPD officers.

76. Because of her refusal to comply, a DPD officer attempted to take Counter-Defendant Wallace down using two arms.

77. Counter-Defendant Wallace flailed her arms and pushed backwards on the officer.

***

80. Counter-Defendant Puente, standing directly in front of a DPD officer refused the directive to move back.

81. Instead, Puente pushed against a DPD officer's protective shield.

***

83. Multiple DPD officers sustained physical injuries as a result of the hurled objections. DPD officers also sustained injuries in the course of trying to detain protestors, including Counter-Defendants who resisted arrest and defied police orders.

84. Counter-Defendant T. Taylor was arrested for Disorderly Conduct and Disturbing the Peace on July 10, 2020 for his behavior at the protest.

85. Counter-Defendant Z. Kolodziej was arrested for Disorderly Conduct and Disturbing the Peace on July 10, 2020 for his behavior at the protest.

86. Counter-Defendant N. Wallace was arrested for Disorderly Conduct and Disturbing the Peace on July 10, 2020 for her behavior at the protest.
***

132. Counter-Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of … committing acts of violence against Counter-Plaintiffs and DPD officers.

133. Counter-Defendants, in combination, conspired to … commit acts of violence against Counter-Plaintiffs and DPD officers.

134. This conspiracy resulted in the illegal, unlawful, or tortious … acts of violence against Counter-Plaintiffs and DPD officers.

135. As a result of the conspiracy and Counter-Defendants' illegal, wrongful, or tortious acts, Counter-Plaintiff sustained injuries and damages including but not limited to the following:
    a. Physical injuries;
    b.  Pain, suffering, and emotional distress; ….
    e. Other damages that may arise during the course of discovery and the course of this action.

*See ECF 43, PageID.606-626.*

The Opinion and Order overlooks these allegations of assault and battery. In

fact, consideration of these allegations are completely absent from the Opinion.

The law recognizes assault and battery as separate, actionable torts. Assault and battery can be underlying torts that underpin a claim of civil conspiracy. *See, e.g., Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 643 (E.D. Mich. 2005). Counter-Plaintiffs' claim of civil conspiracy does not fail simply because the Counter-Plaintiffs chose to not bring a separate claim of assault and battery. Neither case law, nor the Court's Opinion and Order, indicate that a party bringing a claim of civil conspiracy must bring a separate claim to recover for the underlying tort. Rather, Counter-Plaintiffs only need to prove that a sperate actionable tort existed. *See, e.g., Prudential Def. Sols., Inc.,* 2020 WL 6382862, at *9 (quoting *Advoc. Org. for Patients,* 670 N.W.2d at 580. Here, Counter-Plaintiffs have set forth facts sufficient to establish that DWB and the individual Counter-Defendants conspired to threaten and inflict physical harm on DPD officers, and the Court should find that the Counter-Plaintiffs plead an underlying tort with respect to their claim of civil conspiracy.

A finding that Counter-Plaintiffs plead the underlying torts of assault and battery would result in a different disposition of the case. This Court's dismissal of the claim of civil conspiracy was wrongly premised on the "absence" of a well-plead underlying tort. Without an underlying tort, the Court found that Counter-Plaintiffs failed to meet the pleading standard for a claim of civil conspiracy. A finding that Counter-Plaintiffs did, in fact, plead underlying torts—in particular, assault and

battery—would in turn, necessitate a finding that Counter-Plaintiffs met the pleading standard for a claim of civil conspiracy, and their counterclaim would be able to proceed.

## II.   THE COURT ERRED WHEN IT DISMISSED COUNTER-PLAINTIFFS' CIVIL CONSPIRACY CLAIM WITH PREJUDICE.

In ruling that Counter-Plaintiffs failed to sufficiently plead the existence of an underlying tort, the Court dismissed the counterclaim. However, instead of giving Counter-Plaintiffs the opportunity to amend their counterclaim, the Court dismissed the counterclaim with prejudice. This too was in error, and Counter-Plaintiffs should be given the opportunity to file an amended counterclaim.

A party is not required to exercise its right to amend a pleading as a matter of course in order to later amend that pleading. Stated differently, refraining from amending their pleading as a matter of course earlier does not preclude Counter-Plaintiffs from filing an amended counterclaim now. Instead, as Fed. R. Civ. 15(a)(2) states clearly, "The court should *freely give leave* [to amend] when justice so requires." (emphasis added). The Court should therefore freely give Counter-Plaintiffs leave to amend their counterclaim.

Furthermore, amendment of the counterclaim would not be futile. While Counter-Plaintiffs may not use discovery to obtain specific facts necessary to craft a plausible complaint, Counter-Plaintiffs have nonetheless learned of additional facts independent of discovery through review of its own internal records. Indeed, a

15

plaintiff may file another complaint if it should be able to find out the facts it needs to state a claim without the need for discovery. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1053 (6th Cir. 2011); *see Trinkle v. Hammer Trucking, Inc.*, No. 16-14361, 2018 WL 783153, at *2 (E.D. Mich. Feb. 7, 2018) (amended of complaint not futile where the plaintiff was only amending the complaint to "comport with the facts as they became known or more clear during discovery").

If permitted to do so, Counter-Plaintiffs would limit amendment of their counterclaim to include only information from their own records and do so in a way that clarifies the facts of this case. Amendment would serve to better convey the underlying torts committed by DWB and its members, including Counter-Defendants, which would, in turn, satisfy the pleading requirements of Counter-Plaintiffs' counterclaim of civil conspiracy. *Ex. 13*.

## CONCLUSION

WHEREFORE, Counter-Plaintiffs respectfully request that the Court grant their Motion for Reconsideration and enter an Order vacating its March 10, 2021 Opinion and Order granting Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim and permitting Defendants/Counter-Plaintiffs leave to amend their counterclaim.

Dated: March 24, 2021

Respectfully submitted,

*/s/Maria Fracassa Dwyer*
CLARK HILL PLC
Reginald M. Turner (P40543)
Maria Fracassa Dwyer (P60946)
Christopher M. Trebilcock (P62101)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
rturner@clarkhill.com
mdwyer@clarkhill.com
ctrebilcock@clarkhill.com
*On behalf of City of Detroit and Mayor*
*Michael Duggan, Chief James Craig,*
*Officer Stephen Anouti, Officer David*
*Hornshaw, Officer Mariah Erard and*
*Officer Does 1-100, inclusive*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2020, I electronically filed the foregoing paper using the Court's ECF system, which will send notification of such filing to all counsel of record.

*/s/Paula Proffitt* _____

17