UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DETROIT WILL BREATHE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF DETROIT, et al.,<br><br>    Defendants. | Case No. 20-12363<br>Honorable Laurie J. Michelson |

**ORDER ON DEFENDANTS'
MOTION FOR PROTECTIVE ORDER [113]**

Plaintiffs Detroit Will Breathe and 14 individuals have been involved in protest activity in the City of Detroit in response to the death of George Floyd. They allege that Detroit police have responded to their demonstrations with excessive force and have violated their First, Fourth, and Fourteenth Amendment rights.

The scope of discovery has been a challenge since the case began. A few months ago, Plaintiffs filed a motion to compel discovery. (ECF No. 93.) This Court granted the motion in part. (ECF No. 110.) Among other things, this Court ordered that Defendants shall "Produce usernames or handles of the named Defendants for the requested social media sites by May 23, 2022. To the extent these sites are private, and Plaintiffs are unable to access the social media profiles, Defendants are ordered to produce responsive social media posts by June 22, 2022." (ECF No. 110, PageID.1798.)

The Court now realizes that this ruling is susceptible to multiple interpretations. One, that Defendants produce usernames and handles for all social media sites and also produce responsive posts for the private sites. Another, that the Court contemplated two distinct types of social media profiles: those that were public for which usernames and handles were to be produced, and those that were private for which usernames and handles did not need to produced; instead only the postings were to be produced.

This confusion has resulted in further disputes between the parties, leading Defendants to file a motion for a protective order. (*See* ECF No. 113.) Defendants object to turning over the usernames or handles of the named Defendants because "[c]ertain officers have legitimate concerns that providing their usernames and handles for social media will result in personal and private information being released to the public." (ECF No. 113, PageID.1809.) The officers have been harassed via social media in the past and are concerned that revealing their usernames or handles will result in further harassment of themselves or their friends and family. So instead of producing the usernames or handles, Defendants propose that they produce social media posts that pertain to the "issues of police brutality and/or any and all protests and demonstrations against police brutality that have occurred between May 25, 2020 and the present." (ECF No. 113, PageID.1814.) They further request that they be able to redact the usernames and handles on these posts. (*Id.*)

Plaintiffs object to Defendants' proposal, stating that it deviates significantly from the Court's prior order. Plaintiffs argue that at the very least, their attorneys

2

should have access to the usernames and handles to conduct an independent search for the posts. Plaintiffs also argue that Defendants should be sanctioned for their delay in production.

## I.

Federal Rule of Civil Procedure 26 allows the Court to "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[.]" The Court may do this by "limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D).

The Court agrees with Plaintiffs that the social media information is relevant, and it appears that Defendants do not disagree. After all, they agreed to produce relevant social media posts. But Plaintiffs' argument for why the social media information is relevant does not address what more information the usernames and handles, as opposed to the posts alone, give them.

The Court also agrees that Defendants have pointed to only one example of an individual Defendant being harassed via social media.[1] This instance occurred before

---

[1] Defendants also cite to *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) in support of their argument that the officers have a "fundamental liberty interest in protecting their personal security[.]" (ECF No. 113, PageID.1811.) The officers there, however, faced a different situation than the officers here. The officers in *Kallstrom* were undercover officers who "were assured by the City that personal information," like home addresses, would be held in confidence. *Kallstrom*, 136 F.3d at 1059. Here, the officers seek to restrict access to their social media handles. Further, Defendants were not undercover during the protests, and were named in public documents, including filings in this litigation. The *Kallstrom* officers were also investigating a "violent gang" in the city, so there was a heightened threat to their personal security, which included "possibly their lives." *Kallstrom*, 136 F.3d at 1063. Defendants have not shown that the officers here face such a risk due to disclosure of their social media usernames and handles.

3

the present lawsuit was filed. So this information does not persuade the Court that the Defendants will certainly or even likely be subject to harassment if their social media usernames and handles are released—and especially if the information is designated as "attorneys eyes only" and released only to Plaintiffs' attorneys as permitted under the terms of the parties' protective order. (ECF No. 87.)

Instead of relying on these arguments, the Court has considered the reasoning behind its prior order and whether an acceptable middle ground exists to adequately address the ambiguity and both sides' concerns. The Court ordered the named Defendants to turn over their social media usernames and handles because of the parties' arguments to the Court. Specifically, Defendants told the Court that "Defendants object to this request to the extent it attempts to compel the production of documents that are equally available to Plaintiffs." (ECF No. 105, PageID.1757–1759.) Plaintiffs responded that Defendants had yet to inform them if any Defendant maintained any social media accounts during the relevant time and if so, whether they were publicly available. (*Id.*) To reduce the burden on Defendants, the Court intended to order a middle ground. To the extent the requested social media profiles were public, Defendants would produce the username or handles and let Plaintiffs search the profiles, as that information was "equally available to Plaintiffs" once they knew the handles. To the extent the social media profiles were private, Defendants would produce the responsive posts, as Plaintiffs would not be able to search the profiles even with the username or handles.

4

Again, this may not have been clear in the Court's original order. And Plaintiffs have made clear that they were seeking more. So the Court will now make clear what needs to be produced. If any named Defendant keeps a public social media profile, i.e. a profile where if Plaintiffs searched for the handle, they could see posts made by that account, then Defendants must produce to Plaintiffs those usernames or handles without restriction. This is unlikely to include any social media accounts used by any Defendant for undercover work. While the Court is certainly concerned with and will not tolerate the harassment of any named defendant or plaintiff in this matter, any harassment that occurs via public profiles will likely not be the result of such a disclosure. A public profile is able to be accessed by anyone. Plaintiffs are entitled to that same level of access.

To the extent any named Defendant keeps a private social media profile, i.e. a profile where even by searching the defendant's name, username, or handle, the posts from that account cannot be viewed unless the plaintiff is "friends" with or a "follower" of the account, then Defendants must instead turn over two sets of responsive social media posts: one with the usernames or handles redacted that can be shown to Plaintiffs, and one with the usernames or handles unredacted that is designated attorneys-eyes-only and can be seen only by Plaintiffs' counsel. If any of these usernames or handles from the private sites are publicly disclosed, the Court will consider extreme sanctions, including the possible dismissal of Plaintiffs' case.

## II.

As a final note, Plaintiffs request the Court sanction Defendants. The Court will not do so at this time. The parties attempted to resolve this issue with the Court before May 23, 2022, which is when Defendants were ordered to produce the usernames or handles. And though the Plaintiffs may be correct that their requests for social media information have been outstanding for over a year, those requests did not specifically ask for the username and handles. That was put at issue by this Court's March 2022 order. It is reasonable, given the multiple discovery deadlines in that order, for defense counsel to not have been aware of the privacy concerns of their clients until May 2022, which is when they likely started preparing to produce the social media information. Plus, the Court has acknowledged the ambiguity in the prior order. So the Court will not sanction Defendants.

Defendants are ordered to comply with the Court's order described above by June 28, 2022.

SO ORDERED.

Dated: June 15, 2022

                                                      s/Laurie J. Michelson
                                                     LAURIE J. MICHELSON
                                                     UNITED STATES DISTRICT JUDGE